[No. B213484. Second Dist., Div. Five. Apr. 27, 2010.]

Estate of JANICE HELENE KRAUS, Deceased.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Petitioners and Respondents, v.
DAVID KRAUS, Objector and Appellant.

**Counsel**

Julia C. McBride for Objector and Appellant.

Hicks, Mims, Kaplan & Burns and Stephen L. Kaplan for Petitioners and Respondents.

**Opinion**

**TURNER, P. J.—**

## I.   INTRODUCTION

This appeal arises out of a Probate Code sections 850 and 859 petition by two residuary trust beneficiaries—the Regents of the University of California and the Make-A-Wish Foundation of Greater Los Angeles—for restitution of funds. Objector, David Kraus, appeals from a December 19, 2008 judgment and orders after a court trial.[1] The probate court ordered David to return $197,402 to a court-appointed representative of the estate of Janice Helene Kraus and to pay statutory double damages of $394,804. (Prob. Code, §§ 850 et seq., 859.) (All further statutory references are to the Probate Code unless otherwise noted.) We affirm the judgment.

## II.   BACKGROUND

### A.   Pleadings

The two beneficiaries filed an August 29, 2007 petition for transfer and return of property. The two beneficiaries alleged as follows. Janice had executed a will on December 9, 2003. On December 9, 2003, the Janice

---

[1] For purposes of clarity, and not intending any disrespect, we refer to members of the Kraus family by their first names.

Helene Kraus Trust (the trust) was created. The trust was amended on May 12, 2005. On October 22, 2006, David's sister, Janice Helene Kraus, was dying of cancer. Janice was unmarried, did not have any children and she was in hospice care. On October 22, 2006, David had Janice execute a durable power of attorney in his favor. At the time, Janice was semicomatose. On the morning of October 23, 2006, David closed several of Janice's bank accounts and appropriated the funds for himself. The money in those accounts belonged to the trust. Janice died on October 24, 2006, at 7:50 a.m.

The two trust beneficiaries sought to recover the misappropriated funds. The two beneficiaries also sought restitution from California National Bank for turning over the funds to David. The present appeal does not involve any claims against California National Bank. In his March 4, 2008 response to the petition, David denied he was guilty of any wrongdoing.

## B. Evidence

A court trial commenced on July 28, 2008. At issue were moneys in Janice's accounts; funds withdrawn by David under a void power of attorney on October 23, 2006. Janice died the next day on October 24, 2006. The bank accounts in question, and the amounts David withdrew, were as follows: four California National Bank certificates of deposit naming Janice and David's mother, Irene, as beneficiary in the amounts of $18,432.24, $28,929.43, $44,061.56, and $51,252.80; $9,385.07 from Janice and Irene's Wells Fargo Bank joint checking account; and $14,767.93 from Janice's Washington Mutual Bank checking account.

Janice's attorney, Jack A. Thompson, testified as follows. Janice signed her will on December 9, 2003. Janice's will provided the funds in her bank accounts would pour over into her trust. The beneficiary of Janice's will was the trust. Janice executed the trust instrument on December 9, 2003. The trust was amended on May 12, 2005. The beneficiaries were each to receive 50 percent of the trust residue. Mr. Thompson became the trustee of the trust upon Janice's death on October 24, 2006. Janice had disinherited David for two reasons. First, he had a bad temper and she was afraid of him. Second, he had refused to return $160,000 that Irene had given him to hold for her benefit. Mr. Thompson had prepared Irene's estate plan as well as Janice's. The money in the accounts at issue belonged to Janice and not to Irene.

On November 9, 2006, after Janice's October 24, 2006 death, Mr. Thompson began marshalling the trust assets. On November 9, 2006, Mr. Thompson learned that David had gained access to Janice's bank accounts through a

purported power of attorney. Bank records substantiating the withdrawals were received in evidence. As a result, on November 13, 2006, Mr. Thompson, as the successor trustee, wrote David and stated in part: "On November 9 and 10, 2006, I appeared at the following banks: Washington Mutual, Citibank and California Bank. I learned, much to my chagrin and astonishment, that you had terminated all checking, money markets, CDs and IRA accounts—one day prior to Jan's death. [¶] My fiduciary duty as Trustee is to explain why funds belonging to Jan were withdrawn from the aforementioned financial institutions one day prior to her death." On December 15, 2006, David responded to Mr. Thompson's November 13, 2006 letter. David asserted the moneys in most of the accounts were intended to be used for Irene's care. As to funds in the California National Bank, David acknowledged they were inadvertently "pulled by error." On August 8, 2007, Mr. Thompson, in his capacity of successor trustee of the trust, assigned all "choses in action and claims" against David to the beneficiaries.

Irene, Janice and David's mother, died on March 10, 2007, prior to the court trial. At 91 years of age, Irene received Medicare and Social Security benefits. Also, Irene was the beneficiary of Janice's $20,000 life insurance policy. Further, Irene was a beneficiary of Janice's pension plan. In Mr. Thompson's opinion, Irene's future care was adequately funded under her estate plan.

Irene had also disinherited David in the event he survived Janice. In her will, Irene demanded that David and his wife return $160,000. Irene's June 2, 2005 will included the following provision: "I have given during my lifetime certain sums of money to DAVID S. KRAUS and my daughter-in-law JOAN L. KRAUS to be held as custodians for my benefit. These sums, as of the date of this Will, are in the approximate amount of $160,000.00. I hereby order that such funds, including any increases thereon, be made a part of the residue of my estate and be distributed as per Paragraph Fifth of this, my Will." David never returned the $160,000 referenced in Irene's will to her. Irene made no such demand on Janice. On November 11, 2006, Irene executed her trust declaration, which gave David any assets held under that instrument.

David testified. David admitted using a "General Power Of Attorney," executed on October 22, 2006, to take the funds in Janice's accounts. David prepared the power of attorney on October 22, 2006. David saw no reason to contact Mr. Thompson, the successor trustee, about preparing a power of attorney. Nor could David remember speaking with Janice's physicians as to whether she had the capacity to sign the power of attorney. On October 22, 2006, Janice was semiconscious and undergoing hospice care when an "X"

was placed on the signature line of the power of attorney. Joe Damco, her boyfriend, held Janice's hand when the "X" was placed on the signature line of the power of attorney. Janice died on October 24, 2006, at 7:50 a.m., 36 hours after the "X" was placed on the signature line of the power of attorney. At the time of her death, Janice's doctors assumed the cancer had spread to her brain. David prepared the power of attorney to reclaim money in Janice's accounts he thought belonged to Irene. Also, David wanted to secure jewelry that Janice wanted placed in her coffin.

David went to the bank to secure the jewelry the day before Janice died. Also, David, using the power of attorney, closed the bank accounts at issue on October 23, 2006, the day before Janice's death. The funds secured under the power of attorney were placed in accounts in the name of David and his wife. No funds taken by David on October 23, 2006, under the power of attorney were ever placed in Irene's accounts. Funds from one of the accounts were used to purchase a certificate of deposit in the names of David and his wife. Moreover, David named his daughter as the beneficiary of the new accounts. One institution, Citibank, refused to honor the power of attorney as to one of two accounts.

David first disclosed the existence of the power of attorney to Mr. Thompson on December 15, 2006. In a December 15, 2006 letter, David claimed that if he had not taken the money, none would be left for Irene's care and would be given away. David intended to use the power of attorney to pay Janice's health care and funeral expenses as well as to provide care for Irene. No money taken by David was used for Janice's health care expenses. A bank official testified that Irene was the beneficiary of certain accounts held by Janice. After counsel for one of the beneficiaries demanded the funds be repaid, David threatened to expose their greed to the media. David further also wrote: "I am prepared to expose this entire ugly matter in open court. If you think you can bully me into anything, you are truly mistaken. I know the law very well, and you have no standing in the eyes of the court. [¶] Once you bring this ridiculous matter in front of the judge, you will forever be prejudiced in front of her before you begin any new trial. It's a small circle of players in Probate in Los Angeles, and judges have a long memory for anyone that engages in this fraudulent activity. You will long be remembered in her court."

C.    The Probate Court's Ruling and Judgment

The probate court found the power of attorney drafted by David on October 22, 2006, was void and David wrongfully and in bad faith converted

property belonging to the trust. The probate court made no final determination as to the beneficiaries' right to the funds. The probate court entered judgment as follows: "Judgment is entered for petitioners Make-A-Wish Foundation of Greater Los Angeles and The Regents of the University of California against respondent David Kraus as follows: [¶] **AMOUNT OF JUDGMENT** [¶] 1. Pursuant to Probate Code Sections 850 et seq., respondent David Kraus is ordered to deliver $197,402 to a court appointed personal representative of the Estate of Janice Helene Kraus. [¶] 2. Pursuant to Probate Code Section 859, respondent David Kraus is ordered to deliver $394,804 to a court appointed personal representative of the Estate of Janice Helene Kraus. [¶] **OTHER ORDERS** [¶] 3. The funds delivered by respondent David Kraus to the personal representative of the Estate of Janice Helene Kraus shall be distributed pursuant to the testamentary provisions of the pour-over Will of Janice Helene Kraus, or to others based on their claims against the Estate of Janice Helene Kraus. [¶] 4. The minute order issued by the Court on August 22, 2008 is deemed to be the Statement of Decision except that the calculation of damages under Probate Code Section 850 is modified to read: 'Damages owed to those persons who would receive property via the testamentary provisions of the pour-over will of Janice Helen[e] Kraus, or to others based on their claims against the estate, pursuant to Probate Code § 859 are determined to be $394,804.' [¶] 5. This matter is referred to the Public Administrator to determine their availability to petition to be appointed as personal representative of this estate. [¶] 6. This matter is set for a status hearing regarding the Public Administrator's Petition re: appointment as the representative of the estate on December 12, 2008, at 8:30 a.m. in Department 9. [¶] 7. If any other party petitions to become the personal representative of the Estate of Janice Helene Kraus their petition shall be set for December 12, 2008, at 8:30 in Department 9."

## III.  DISCUSSION

### A.  Sections 850 and 859

Sections 850 to 859 are in division 2, part 19 of the Probate Code, which governs conveyances or transfers of property claimed to belong to a decedent or other person. Section 850 provides in part: "(a) The following persons may file a petition requesting that the court make an order under this part: [¶] . . . [¶] (2) . . . [A]ny interested person in any of the following cases: [¶] . . . [¶] (C) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another. [¶] (D) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another."

(See *Estate of Myers* (2006) 139 Cal.App.4th 434, 440 [42 Cal.Rptr.3d 753]; *Parker v. Walker* (1992) 5 Cal.App.4th 1173, 1184 [6 Cal.Rptr.2d 908].) Section 48, subdivision (a) defines an "interested person" as follows: "(a) Subject to subdivision (b), 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Section 855 states, "An action brought under this part may include claims, causes of action, or matters that are normally raised in a civil action to the extent that the matters are related factually to the subject matter of a petition filed under this part." (See *Estate of Myers, supra*, 139 Cal.App.4th at p. 440.) Pursuant to section 856, subject to exceptions not applicable here, "[I]f the court is satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing the personal representative or other fiduciary, or the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief." Division One of the Fourth Appellate District has explained, "Section 850 et seq. provides a mechanism for court determination of rights in property claimed to belong to a decedent or another person." (*Estate of Young* (2008) 160 Cal.App.4th 62, 75 [72 Cal.Rptr.3d 520].) The statutory scheme's "evident purpose" is to carry out the decedent's intent and to prevent looting of estates. (*Id.* at p. 92.) Our colleague, Associate Justice Stuart R. Pollak described section 850 thus: ". . . *Estate of Myers, supra*, 139 Cal.App.4th 434 . . . recognized the right of a creditor of a decedent under Probate Code section 850 to pursue the decedent's claim to property held in the name of another. The procedure authorized by Probate Code section 850 is comparable to a creditor's suit under Code of Civil Procedure section 708.210, and the decision provides support by analogy for the conclusion we reach here. (See *Estate of Myers, supra*, at pp. 440–442.)" (*Cabral v. Soares* (2007) 157 Cal.App.4th 1234, 1243, fn. 4 [69 Cal.Rptr.3d 242].)

█ Section 859 provides for recovery of twice the value of property taken in bad faith. (§ 859; *Estate of Young, supra*, 160 Cal.App.4th at pp. 86–87; *In re Pereira and Melo Dairy* (Bankr. E.D.Cal. 2005) 325 B.R. 1, 2.) Section 859 states: "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to the estate of a decedent, conservatee, minor, or trust, the person shall be liable for twice the value of the property recovered by an action under this part. The remedy provided in this section shall be in addition to any other remedies available in law to a trustee, guardian or conservator, or personal representative or other successor in interest of a decedent." Some version of this civil penalty statute has been operative since 1850. (*Estate of Young, supra*, 160 Cal.App.4th at

p. 86.) Section 859 is punitive in nature. (*Estate of Young, supra*, 160 Cal.App.4th at p. 88; cf. *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 739 [108 Cal.Rptr. 845, 511 P.2d 1197]; *County of San Diego v. Milotz* (1956) 46 Cal.2d 761, 766 [300 P.2d 1]; *People v. Union Pacific Railroad Co.* (2006) 141 Cal.App.4th 1228, 1257–1258 [47 Cal.Rptr.3d 92] [civil penalties are punitive in character].) The section 859 penalty is imposed when an interested party establishes both that the property in question is recoverable under section 850 and that there was a bad faith taking of the property. (*Estate of Young, supra*, 160 Cal.App.4th at p. 89; *In re Pereira and Melo Dairy, supra*, 325 B.R. at p. 5.)

B. David's Argument He Should Not Be Required to Deliver $197,402 to a Court-appointed Personal Representative of Janice's Estate Pursuant to Section 850 Is Without Merit

David concedes that the power of attorney was invalid. David further concedes the probate court properly determined, "[T]he designations of ownership and/or testamentary intent in effect at the time [Janice purportedly executed the power of attorney] shall determine entitlement to the accounts in question." (See *Estate of Stephens* (2002) 28 Cal.4th 665, 672 [122 Cal.Rptr.2d 358, 49 P.3d 1093] [when attorney in fact acts without authority under invalid power of attorney, attempted action is void, and any conveyance under such circumstances is void]; *Estate of Huston* (1997) 51 Cal.App.4th 1721, 1726 [60 Cal.Rptr.2d 217] [same]; *Shields v. Shields* (1962) 200 Cal.App.2d 99, 101 [19 Cal.Rptr. 129] [same]; see also § 4000 et seq. [the Power of Attorney Law].) David argues the probate court should have denied the petition because the beneficiaries did not prove they had any right to the funds. Thus, according to David, the probate court exceeded its jurisdiction when it ordered damages *paid to* an unnamed personal representative of Janice's estate. Further, because the bank accounts were beneficiary accounts, David argues the funds should be distributed by operation of law outside any probate and he should retain the funds unless and until someone proves, by clear and convincing evidence, a better claim to them. David's latter argument references section 5302, subdivision (a), pursuant to which, "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent."

We review questions as to the jurisdiction and authority of the probate court de novo. (*Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 405 [40 Cal.Rptr.3d 378]; see *Day v. Collingwood* (2006) 144 Cal.App.4th 1116,

1123–1124 [50 Cal.Rptr.3d 903].) We apply the well-settled rules of statutory construction. The Supreme Court has held: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; see *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, our Supreme Court has noted: " 'If the [statutory] language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; accord, e.g., *People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].) We conclude the probate court had the power and the discretion to fashion a remedy as it did.

First, David argues the probate court should have denied the section 850 petition because the beneficiaries did not prove *they* had any right to the funds. As noted above, under section 850, any interested person can request that the probate court order a conveyance or transfer of property under specified circumstances, including: "[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another" (§ 850, subd. (a)(2)(C)) or "[w]here the decedent died having a claim to real or personal property, title to or possession of which is held by another" (§ 850, subd. (a)(2)(D)). Section 850, by its clear and plain terms, does not *require* the probate court to find that the property in question belongs to the interested petitioning party. Here, the trust beneficiaries sought an order requiring David to relinquish misappropriated property. That it is unclear who is entitled to the property does not deny the beneficiaries of their interest in its rightful disposition—even if, ultimately, it does not go to the trust.

Nor did the probate court, as David asserts, exceed its jurisdiction by ordering "damages" paid to an unnamed personal representative of Janice's estate. As discussed above, the probate court placed the misappropriated funds, together with the statutory penalty, in Janice's estate for a future determination of their proper disposition. As noted previously, pursuant to section 856, "[I]f the court is satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing . . . the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, *or granting other appropriate relief.*" (Italics added.) Section 856 clearly and unambiguously grants the probate court the power not only to order a conveyance or transfer to the person entitled to the property in question, but also to *grant*

*other appropriate relief.* Even apart from the statutory authority, the probate court is a court of general jurisdiction (§ 800; *Estate of Young, supra,* 160 Cal.App.4th at p. 86) with broad equitable powers. (See, e.g., *Estate of Stanley* (1949) 34 Cal.2d 311, 319 [209 P.2d 941]; *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1311–1312 [78 Cal.Rptr.3d 435]; *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 624 [79 Cal.Rptr.2d 146]; *Alexandrou v. Alexander* (1974) 37 Cal.App.3d 306, 320–321 [112 Cal.Rptr. 307]; *Rivero v. Thomas* (1948) 86 Cal.App.2d 225, 238 [194 P.2d 533]; 60 Cal.Jur.3d (2005) Trusts, § 419.) The probate court has jurisdiction to determine whether property is part of the decedent's estate or living trust. (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951–952 [20 Cal.Rptr.2d 433]; see *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427 [78 Cal.Rptr.3d 838].) As the Court of Appeal discussed in *Estate of Heggstad, supra,* 16 Cal.App.4th at page 952: "The probate court has general subject matter jurisdiction over the decedent's property and as such, it is empowered to resolve competing claims over the title to and distribution of the decedent's property. (§ 7050, subd. (b); see, e.g., *Estate of Baglione* (1966) 65 Cal.2d 192, 196–197 [53 Cal.Rptr. 139, 417 P.2d 683] . . . .)" (Accord, *Parker v. Walker, supra,* 5 Cal.App.4th at p. 1184.) The probate court may apply general equitable principles in fashioning remedies and granting relief. (*Estate of Bissinger* (1964) 60 Cal.2d 756, 764–765 [36 Cal.Rptr. 450, 388 P.2d 682]; 24 Cal.Jur.3d (2006) Decedents' Estates, § 35.) Our Supreme Court has held, "In the exercise of its legal and equitable powers (see *Schlyen* v. *Schlyen* [(1954)] 43 Cal.2d [361,] 371 [273 P.2d 897]; *Estate of Cover* [(1922)] 188 Cal. 133, 139 [204 P. 583]), a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim." (*Estate of Baglione, supra,* 65 Cal.2d at p. 197.) Our Supreme Court explained: "The ultimate aim and purpose of administrative proceedings, including any special proceeding or contest to determine heirship, is to ascertain the persons entitled to share in the estate of the decedent and to decree distribution accordingly. It will not be questioned that justice and sound policy require that the estates of decedents be distributed to persons rightfully entitled thereto and that every concern and endeavor of a probate court should be to the accomplishment of that purpose." (*Edlund v. Superior Court* (1930) 209 Cal. 690, 695 [289 P. 841]; accord, *Estate of Broad* (1942) 20 Cal.2d 612, 622 [128 P.2d 1]; see *O'Day v. Superior Court* (1941) 18 Cal.2d 540, 543 [116 P.2d 621] ["the object of the probate and administration proceedings is to secure distribution to the persons entitled to share in the estate"]; 24 Cal.Jur.3d, *supra,* Decedents' Estates, § 11.) It is pointless to deny a probate court the power to determine the whole controversy between the parties before it. (*Estate of Baglione, supra,* 65 Cal.2d at p. 197; see also *Estate of Fincher* (1981) 119 Cal.App.3d 343, 350 [174 Cal.Rptr. 18].)

Here, the probate court could conclude the evidence was inconclusive with respect to the ultimate disposition of the funds. When David closed the bank accounts, Janice was still living. The funds did not remain on deposit at the time of Janice's death. And while Janice had named account beneficiaries, there was also evidence she intended the funds in her bank accounts to go to her trust. (See §§ 5302, subd. (a) ["Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent."], 6600, subd. (b)(2); *Estate of Petersen* (1994) 28 Cal.App.4th 1742, 1751 [34 Cal.Rptr.2d 449].) What was clear, as the probate court found, was that David was *not* entitled to take the money out of Janice's bank accounts and put it in his own name. Given these circumstances, the probate court could reasonably, in the exercise of its statutory and equitable powers, place the funds, together with the statutory penalty imposed on David, in Janice's estate for a future determination of their proper disposition. Under the language and purpose of the statutory scheme, and given the probate court's broad powers, it was not required to allow the wrongdoer to retain the property misappropriated in bad faith until someone else proved a "better" right to it. Under the plain terms of the statutory scheme, the probate court was not required to determine who was entitled to the funds before it could take them away from a person who was *not* entitled to them. Further, Irene's representative, as well as the trust beneficiaries who brought the present petition, and anyone else asserting a right to the money, remains free to assert those claims. The probate court's present decision was within its statutory authority to grant appropriate relief and within its broad jurisdiction to fashion an equitable remedy.

Finally, David contends that because the bank accounts were beneficiary accounts, the funds should be distributed by operation of law outside any probate; and he should retain the funds unless and until someone proves, by clear and convincing evidence (§ 5302), a better claim to them. As noted above, when David closed Janice's accounts and took her money, she was still alive. The bank accounts have been closed and no longer exist. Additionally, there was evidence Janice intended that the money in the bank accounts would pour over into her trust, notwithstanding the manner in which the accounts were held. And the probate court could reasonably find David, who has been found to have in bad faith wrongfully taken the money, has no right to retain the funds.

### C. There Is No Merit to David's Arguments Concerning the Section 859 Penalty

David has made a series of shifting arguments with respect to the civil penalty imposed under section 859. In the trial court, although the beneficiaries' petition explicitly sought a civil penalty, David's written response did

not mention section 859. In closing argument following trial, however, David's counsel, Julia C. McBride, argued the standard for awarding a section 859 penalty was uncertain but, in any event, he had acted in good faith. In his new trial motion, he argued: "[E]xemplary damages may not be awarded to a party [(the trust beneficiaries)] that has no claim at all to the actual damages"; the statutory penalty imposed was excessive and did not bear a rational relationship to the actual "damages" in violation of the due process clause of the United States Constitution, Fourteenth Amendment, because "the exemplary damages awarded, $394,804, are an infinite multiple higher than the amount of actual or compensatory damages, because *no* actual damages were awarded to the Petitioners"; "only at such time as a party proves his or her claim to the assets in question should the Court make an Order determining whether the non-prevailing party has acted in bad faith with regard to the prevailing party"; and David behaved appropriately, not in bad faith, in refusing to turn over the funds because the trust had no claim to the money. In his briefs on appeal, David asserts: because the probate court "refused to name the party who will ultimately win section 850 damages," that is, the court did not determine whether the property "belong[s] to the estate of a decedent . . . or trust," no section 859 penalty could be imposed; "there is no basis for awarding *exemplary* damages to the hypothetical Personal Representative, or anyone other than the party found to have been injured"; there was no basis for imposing the civil penalty where David did not in bad faith withhold property from a party with a right to it—"[David] **rightfully** withheld said property from the parties who demanded it from him because those parties, the Petitioners, **had no right to the property**"; as no damages were awarded, no section 859 penalty may be imposed; in the alternative, the amount of "actual or compensatory damages" awarded to the petitioners (zero) bore no rational relation to the "punitive damages" ($394,804); and the award could be excessive because it is disproportionate to David's ability to pay, but no evidence of his financial condition was presented. (Original italics & boldface.) With respect to the last argument, David concludes: "The Court did not ask for any evidence on [his financial circumstances], nor was there ever any discussion or consideration of [his] ability or inability to pay punitive damages in the amount of $394,804. . . . [T]he award of punitive damages must be overturned." These issues involve the proper interpretation of statutes and their application to undisputed facts; therefore, we exercise independent review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1148–1149 [52 Cal.Rptr.3d 209]; *Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 522–523 [16 Cal.Rptr.3d 909].)

■ The first three related arguments—that no civil penalty could be imposed until the probate court determines the ultimate disposition of the misappropriated funds, that "there is no basis for awarding *exemplary* damages to the hypothetical Personal Representative, or anyone other than the party found to have been injured," and "[David] **rightfully** withheld said property from the parties who demanded it from him because those parties, the Petitioners, **had no right to the property**"—are without merit. (Original italics & boldface.) As noted, section 859 unambiguously states, "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to the estate of a decedent, conservatee, minor, or trust, the person shall be liable for twice the value of the property recovered by an action under this part." As noted above, when it is established that property is recoverable under section 850 and that the party who took the property acted in bad faith, then the section 859 penalty may be imposed. (*Estate of Young, supra,* 160 Cal.App.4th at p. 89; *In re Pereira and Melo Dairy, supra,* 325 B.R. at p. 5.) Here, the probate court found David in bad faith wrongfully took money that was recoverable under section 850. At the time it was misappropriated, the money belonged to Janice. Now that Janice is deceased, the money belongs to her estate, her trust, or, potentially, some party claiming against her estate. But it is in David's possession. Because the probate court found David in bad faith wrongfully took Janice's money, he could properly be found liable for twice the value of that property. The statutory emphasis is not on to whom the property belongs, but whether the person in possession in bad faith wrongfully acquired it. As discussed above, the probate court is charged with marshalling, protecting, and properly distributing property claimed to belong to a decedent. (*Estate of Broad, supra,* 20 Cal.2d at p. 622; *Edlund v. Superior Court, supra,* 209 Cal. at p. 695; *Estate of Heggstad, supra,* 16 Cal.App.4th at pp. 951–952; *Parker v. Walker, supra,* 5 Cal.App.4th at p. 1184.) Section 850 et seq. are intended to aid in that endeavor. (See *Estate of Myers, supra,* 139 Cal.App.4th at p. 440; *Parker v. Walker, supra,* 5 Cal.App.4th at p. 1184; *Estate of Young, supra,* 160 Cal.App.2d at pp. 75, 86–89, 92; see also *In re Pereira and Melo Dairy, supra,* 325 B.R. at p. 2.)

In a closely related argument, David asserts the probate court did not award any damages to the trust beneficiaries, therefore no section 859 penalty could be imposed. Section 850 et seq. does not contemplate an *award* of *damages* to anyone. The statutory scheme's purpose is to effect a conveyance or transfer of property belonging to a decedent or a trust or another person under specified circumstances, to grant any appropriate relief to carry out the decedent's intent, and to prevent looting of decedent's estates. (§ 856; *Estate*

*of Young, supra,* 160 Cal.App.4th at p. 92.) It provides the probate court with a mechanism to determine rights in property belonging to a decedent or to someone else. (160 Cal.App.4th at p. 75.) David generally mischaracterizes this case as involving an award of actual and exemplary damages to a nonparty. But the probate court did not award damages. It ordered David to hand over misappropriated funds together with a statutory penalty for his bad faith conduct. The probate court did not award the money to anyone. It merely placed the misappropriated funds in Janice's estate pending the probate court's ultimate disposition of the funds. The probate court took the funds out of the hands of the person who wrongfully acquired them—David. That is precisely what section 850 et seq. is intended to do.

David further asserts the "punitive damage award" must be reversed because the amount of "actual or compensatory damages" awarded to the beneficiaries (zero) bore no rational relation to the "punitive damages" ($394,804). This argument proceeds from a misdescription of the underlying facts. No actual or compensatory damages were awarded to anyone. And, if we were to adopt David's terms, the amount of "actual or compensatory damages" was not zero, it was the amount of money he misappropriated, $197,402. Even assuming the comparison David suggests is an appropriate one under the law, David does not contend the statutory penalty, $394,804, bore no rational relation to the value of the property recovered, $197,402.

■ David argues the section 859 penalty would be excessive because it is disproportionate to his ability to pay, but the trust beneficiaries did not introduce evidence of David's financial condition. The ability to pay argument was not raised in the probate court. Even if the issue were properly raised, we would conclude David's financial condition under these circumstances was not a relevant consideration. The Courts of Appeal have held evidence of a defendant's financial status is not essential to the imposition of statutory penalties, and financial inability to pay is a matter to be raised in mitigation. (*Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 276 [20 Cal.Rptr.3d 92]; *People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 726 [128 Cal.Rptr.2d 542]; *Rich v. Schwab* (1998) 63 Cal.App.4th 803, 817 [75 Cal.Rptr.2d 170]; *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1601 [265 Cal.Rptr. 719]; *State of California v. City and County of San Francisco* (1979) 94 Cal.App.3d 522, 530–532 [156 Cal.Rptr. 542]; Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2009) ¶¶ 3:281.2 to 3:281.2a, pp. 3-264 to 3-264.1 (rev. # 1, 2008).) The trust beneficiaries had no obligation to present evidence of David's financial condition or his ability to pay the mandatory statutory penalty.

## IV. DISPOSITION

The December 19, 2008 judgment is affirmed. Petitioners, Make-A-Wish Foundation of Greater Los Angeles and the Regents of the University of California, are to recover their costs on appeal from the objector, David Kraus.

Armstrong, J., and Mosk, J., concurred.