Filed 6/28/16  Estate of Kasch CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Estate of JOHN E. KASCH, Deceased. | D067345 |
| JOHN A. KASCH et al., | |
| Petitioners and Appellants, | (Super. Ct. No. PN29963) |
| v. | |
| HAROLD S. SMALL et al., | |
| Objectors and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Reversed.

A. Daniel Bacalski, Jr. and Douglas Dubé for Petitioners and Appellants.

Klinedinst, Heather L. Rosing, David M. Majchrzak; Hughes & Pizzuto, Ralph E. Hughes and Anne M. Rudolph for Objectors and Respondents.

This case has been pending in our courts for almost nine *years* and is now before us a second time.  In *In re Estate of Kasch* (Oct. 11, 2012, D060255) (nonpub. opn.)

(*Kasch I*), we held petitioners and appellants John A. Kasch and Barbara Kasch-Leshinski, brother and sister (sometimes collectively petitioners) had standing under Probate Code section[1] 850, subdivision (a)(2)(C) to assert a claim to one-half of the proceeds of a retirement account, and one-half of the proceeds of two trusts, held by their father at the time of his death in 1998.

However, instead of a trial on the merits, on remand the probate court ruled plaintiff's claim was "procedurally flawed" by their failure to file a creditor's claim under section 9000 et seq. and dismissed their fourth amended petition. The court made this ruling despite the fact the case then had been pending for almost eight *years* and despite the fact objectors, respondents and co-trustees Louise Kasch, decedent's second wife, and Harold Small, an estate planning attorney who assisted the decedent with his estate plan (Small; collectively objectors), had never asserted the failure to file a creditor's claim as an affirmative defense or otherwise raised the issue in any of their responses/objections to petitioners' petitions, as amended.

As we explain, we conclude the court erred when it dismissed petitioners' fourth amended petition because of their failure to file a creditor's claim. Reversed.

OVERVIEW

A. *Facts and Procedure in Kasch I*[2]

"In 1977 John E. Kasch (John [or decedent]) and Katherine Kasch (Katherine)

---

[1]    All further statutory references are to the Probate Code unless otherwise noted.

[2]    Much of this summary is derived from the record and our opinion in *Kasch I*.

dissolved their marriage by way of a judgment of dissolution entered in the state of Illinois.  The Illinois judgment incorporated the terms of a memorandum of agreement (MOA).

"In pertinent part the MOA required John leave one-half of his 'net estate' to the two children he had with Katherine, appellants [i.e., petitioners] John A. Kasch and Barbara Kasch-Leshinski.  The MOA defined John's net estate as his 'taxable estate . . . *as currently defined in the Internal Revenue Code of 1954*, as amended, less all costs and expenses of administration, funeral and burial expenses, debts paid by the estate of such party, claims allowed against the decedent, or his or her estate, and [estate taxes].'  (Italics added.)  The MOA required John make the agreed provisions for his children either by way of a valid last will and testament or by creation of trusts for the sole benefit of appellants.  [¶] . . . [¶]

"Following the dissolution of his marriage to Katherine, John married respondent Louise Kasich [*sic*] (Louise).  While John was still living, he engaged the services of respondent Harold Small, an estate planning attorney.  Small prepared a number of estate planning documents by which John named Louise the sole surviving direct beneficiary of a substantial retirement account and the beneficiary of two inter vivos trusts in which John placed other substantial assets.  Small and Louise were named as successor trustees of the trusts.

"John died on September 25, 1998.  On June 24, 1999, Small wrote to appellants and advised them: (1) they were beneficiaries of one of the two trusts established by John before his death; (2) the trust which provided for them expressed John's belief an

3

individual retirement account he held was not part of his net estate within the meaning of the Internal Revenue Code of 1954 as it existed in 1977 and hence was not part of his net estate within the meaning of the MOA; and (3) after deductions provided for in the MOA, appellants were each entitled to a total distribution from the trust of approximately $450,000.

"Although Small and Louise filed an estate tax return on December 27, 1999, they declined appellants' request for a copy of the return. Appellants made a Freedom of Information Act (FOIA) (Title 5, United States Code, section 552 et seq.) request for the return and obtained a copy of it on or about April 25, 2004. The estate tax return reported that John's net estate for purposes of complying with the provisions of the Internal Revenue Code amounted to $8,173,491. Thereafter, appellants retained an estate tax lawyer who, based on his review of the return and the provisions of the MOA, advised appellants that for purposes of complying with the MOA, John's net estate at the time of his death had a value of $4,324,845, and that appellants were each entitled to a distribution of $1,081,221.25 under the terms of the MOA. [¶] . . . [¶]

"In April 25, 2007, appellants filed a petition in probate court which alleged they were entitled to relief under section 850. In addition to seeking relief under section 850, appellants filed a petition for letters of special administration which the probate court granted; accordingly, appellants were appointed special administrators of their father's estate and issued letters of special administration.

"Over the following four years, Small and Louise challenged various iterations of appellants' section 850 petition. In February 2011 appellants filed a fourth amended

4

petition which alleged Small and Louise had control of assets, half of which should have been provided to appellants under the terms of the MOA. The petition further alleged that Small and Louise were aware of appellants' claims to the assets at the time John died, that Small and Louise were constructive trustees of the amounts belonging to appellants, and that under section 859 Small and Louise were liable for double the amount of the assets they held unlawfully.

"Small and Louise filed a demurrer to the fourth amended petition. They argued the claims set forth in appellants' petition were not cognizable as probate matters. The trial court agreed and in particular rejected appellants' contention the petition stated claims under section 850, subdivision (a)(2)(C); hence the probate court sustained the demurrer without leave to amend and ordered the petition dismissed. Appellants filed a notice of appeal from the order dismissing their petition." (*Kasch*, *supra*, D060255 [at pp. 1-3], fns. omitted.)

B. *Our Decision in Kasch I*

In the first appeal, we concluded petitioners' claim set forth in their fourth amended petition fell squarely within the express terms of section 850, subdivision (a)(2)(C): "The appellants are plainly 'interested persons' within the meaning of section 850, subdivision (a)(2). Section 48 defines 'interested person' as including '[a]n heir, devisee, child, spouse, creditor, beneficiary, and *any other person having a property right in or claim against* a trust estate or *the estate of a decedent* which may be affected by the proceeding.' (Italics added.) As direct beneficiaries of the MOA, appellants had a claim

5

on John's estate and plainly that interest will be affected by a determination of what assets were within John's 'net estate' at the time of his death.

"Importantly, the record shows that at the time of his death John had possession of or title to assets which appellants claim rightfully belong to them. There can be no question that at the time of his death John was in fact the owner of the retirement account which named Louise as beneficiary. Moreover, Small's June 24, 1999 letter identifies Louise and himself as *successor* co-trustees of the disputed trusts; the obvious inference of this statement—and more than sufficient to withstand a demurrer—is that until his death John was trustee of his trusts and thus in possession of trust assets at the time of his death within the meaning of the section 850.

"Finally, it is self-evident that, as required by the statute, appellants claim an interest, under the terms of the MOA, in the retirement account and trust assets as well as the proceeds of those assets.

"Notwithstanding the express terms of the statute and the broad interpretation of the statute set forth in [*Estate of*] *Myers* [(2006) 139 Cal.App.4th 434 (*Myers*)] and [*Estate of*] *Kraus* [(2010) 184 Cal.App.4th 103 (*Kraus*)], Small and Louise argue that because at the time of John's death all of his assets were either subject to the survivorship provisions of his retirement account or in his inter vivos trusts, no probate estate existed and accordingly relief under section 850 is not available. There is nothing on the face of . . . section 850 which limits relief to instances where the decedent has left an estate subject to probate. In *Myers* the fact the decedent plainly and intentionally placed her home outside her probate estate prior to her death did not prevent the probate court from

6

acting under section 850 to recover the value of the home from her daughter's boyfriend. More particularly, in *Kraus* the fact that, by virtue of the power of attorney, the decedent's brother took possession of her assets, did not prevent the probate court from using sections 850 and 856 and the court's inherent equitable powers to compel the creation of a probate estate and order the disputed assets transferred to the estate. Here, if, as we must, we accept appellants' contention John breached the MOA by placing his assets in the retirement account subject to Louise's right of survivorship and in inter vivos trusts which made her a beneficiary, John committed an act analogous to the decedent's transfer of her home, discussed in *Myers,* and gave rise to a claim subject to the probate's power under section 850. As in both *Myers* and *Kraus* the fact that upon his death John's assets were not within his probate estate did not prevent the probate court from ordering those assets be returned and made subject to appellants' rights under the MOA." (*Kasch I*, *supra*, D060255 [at pp. 5-6], fn. omitted.)

C. *Proceedings on Remand*

On remand and after the case was reassigned yet again,[3] the court at a trial readiness conference raised sua sponte the issue of whether petitioners were required to file a creditor's claim against John's estate. After vacating the trial date, the court ordered further briefing on this issue. Before the hearing, the court further ordered petitioners to file a supplement to their fourth amended petition setting forth "(1) the party or parties

---

[3]     Petitioners note in their opening brief that "part of the procedural complications" in this case arose from the case being reassigned to "four different judges."

7

against whom . . . each claim(s) is made; and (2) a description of the nature of each claim, i.e., the action or inaction of such party that justifies the relief sought."

The court in its January 5, 2015 nine-page order denied petitioners' fourth amended petition and dismissed it as a matter of law. In so doing, the court ruled the gravamen of petitioners' action was that John "violated their rights under a contract to make a [w]ill"; that as such, their claim was "procedurally flawed" by their failure to file a creditor's claim under section 9000 et seq.; that petitioners had "set forth no claim for title to a specific piece of property, certain personal services, or any other assertion that could possibly rise to an equitable claim"; that they therefore were "not entitled to equitable relief, whether in the form of specific performance, constructive trust, or otherwise"; and that because their claim could be satisfied by money damages, their remedy was "at law, pure and simple."

With respect to petitioners' contention that their claim was made under section 850 and, thus, was not a creditor's claim, the court ruled this position had "no basis in law, as the two are not mutually exclusive. Clearly, a creditor can proceed by way of a Probate Code § 850 petition, provided that the creditor's claims procedures have first been met." Petitioners timely appealed.

### DISCUSSION

Objectors contend that throughout the more than "eight" (now approaching nine) years this case "has been winding its way through the courts, [petitioners] have failed to comply with the requirements to pursue a legally cognizable probate claim against the estate of their late father, John." This contention, however, flatly ignores this court's

8

holding in *Kasch I* that petitioners' fourth amended petition fell squarely within the express terms of section 850, subdivision (a)(2)(C).

Indeed, in *Kasch I* we concluded that petitioners were direct beneficiaries of the MOA and, as such, that they "had a claim on John's estate and plainly that interest will be affected by a determination of what assets were within John's 'net estate' at the time of his death." (*Kasch I*, *supra*, D060255 [at p. 5].) Thus, in *Kasch I* we clearly contemplated that the focus on remand would be the determination of what assets, if any, were included in John's "net estate."

Rather than focusing on that issue, however, the court instead ruled petitioners were barred from pursuing their claim because they failed to file a creditor's claim and because they allegedly had an adequate remedy at law. We conclude the court erred when it found petitioners were barred from pursuing their section 850 petition.

A. *Waiver/Forfeiture*

It is axiomatic that when a "party against whom a complaint or cross-complaint has been filed fails to object to the pleading, either by demurrer or answer, that party is deemed to have waived the objection unless it is an objection that the court has no jurisdiction of the subject of the cause of action alleged in the pleading or an objection that the pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.80, subd. (a).)

The failure to file a claim is *not* jurisdictional. "Courts have held that in some limited circumstances the time requirement for filing a creditor's claim can be waived or the estate may be estopped from relying on it when the decedent's representative has

9

induced a creditor not to file a timely claim."  (*Dacey v. Taraday* (2011) 196 Cal.App.4th 962, 978 (*Dacey*), citing *Varney v. Superior Court* (1992) 10 Cal.App.4th 1092, 1101–1102; *Satterfield v. Garmire* (1967) 65 Cal.2d 638, 645; *Katz v. A.J. Ruhlman & Co.* (1945) 69 Cal.App.2d 541, 545-546; *Estate of Sturm* (1988) 201 Cal.App.3d 14, 18.) *Dacey* concluded that the defendant estate waived any claim of error based on the plaintiff's failure to file timely a creditor's claim by failing to "sufficiently preserve[ ] [the issue] as an *independent basis* for rejecting [the plaintiff's] breach of contract claim." (*Dacey*, at p. 978.)  In so holding, the court rejected the estate's contention that "it could raise this issue for the first time on appeal because [the plaintiff's] failure to file a claim represents an incurable defect."  (*Ibid.*)

Dacey follows a line of vintage cases from our high court recognizing that "a judgment would not be void" for failure to prove that a creditor's claim was presented to an estate's executor.  (*Falkner v. Hendy* (1895) 107 Cal. 49, 52–53 (*Falkner*), citing *Bank of Stockton v. Howland* (1871) 42 Cal. 129 and *Drake v. Foster* (1877) 52 Cal. 225; see *Burmester v. McNear* (1919) 42 Cal.App. 527, 529-530.)  *Falkner* concluded the "effect of these cases is that proof of the presentation of the claim is not a fact essential to the validity of the judgment." (*Falkner*, *supra*, 107 Cal. at p. 53; see *Radar v. Rogers* (1957) 49 Cal.2d 243, 250 (*Radar*) [noting the "[t]he defense that suit was commenced before the presentation and rejection of claim 'is simply matter of abatement—a defense which is not favored, and must be made by plea, and in proper time, or it is waived' "].)

In our independent review of the record, we note during the many years of litigation that objectors have never raised the issue of whether petitioners were required

10

to file a creditor's claim, much less in a "proper time" (see *Radar*, *supra*, 49 Cal.2d at p. 250), despite (1) responding to petitioners' petitions, as amended, which responses also included myriad *other* affirmative defenses asserted by objectors; (2) filing multiple demurrers to petitioners' petitions; and (3) filing multiple motions including a motion for summary judgment and a motion to strike, among *many* others.

Consistent with these authorities, we conclude objectors waived or forfeited, pursuant to Code of Civil Procedure section 430.80, any objection based on petitioners' failure to file a creditor's claim. Because we deem the creditor's claim issue waived or forfeited, we further conclude the court erred when it raised this defense sua sponte— about eight *years* after petitioners filed their petition and after this court's *Kasch I* opinion—and ruled petitioners were barred from pursuing their claim because of an alleged "procedural[] flaw[]."

B. *Petitioners Were Not Creditors within the Meaning of Section 9000*

Absent waiver or forfeiture, we would still conclude the court erred in finding petitioners' claim was barred as a result of their failure to file a creditor's claim. As relevant here, "claim" means "a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether *arising in contract*, tort, or otherwise." (§ 9000, subd. (a)(1), italics added.) A "creditor" means "a person who may have a claim against estate property." (*Id.*, subd. (c).) The failure to file timely a creditor claim as provided bars that claim. (§ 9002, subd. (b).)

11

In ruling petitioners were required to file a creditor's claim under section 9000, the court principally relied on *Morrison v. Land* (1915) 169 Cal. 580 (*Morrison*) and *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822 (*Wilkison*).  We conclude both cases are inapposite here.

In *Morrison*, the plaintiff sought to specifically enforce a contract between the plaintiff and the deceased, whereby the deceased agreed to bequeath $50,000 to the plaintiff in return for the plaintiff's 40 years of faithful employment in a business owned and operated by the deceased.  The *Morrison* court concluded that in circumstances where a party breaches a contract with another to bequeath property by a last will, "the party damaged has an action at law for the damage caused by such breach of the promisor, and in some cases this, by reason of the circumstances, may be his [or her] only remedy, for a resort to any equitable remedy can be had only where the circumstances are such as to make the case one within the well settled principles relative to the proper exercise of equitable jurisdiction." (*Morrison*, *supra*, 169 Cal. at pp. 584-585.)  The court further concluded that when a "party damaged is restricted to his [or her] remedy at law for the breach, he [or she] must necessarily proceed upon the theory that he [or she] is a 'creditor' of the deceased, having a 'claim against the estate' 'arising upon contract,' within the meaning of those words as used in our probate law, and he [or she] is subject to the provisions of our statutes requiring presentation of claims to the executor or administrator and judge." (*Id.* at p. 585.)

In *Wilkison*, the plaintiff brought a cause of action for "quasi-specific performance" against his aunt, "seeking to impose a constructive trust on the *proceeds*

12

from the sale of the home" of his decedent grandmother. (*Wilkison*, *supra*, 101 Cal.App.4th at p. 825, italics added.) Because the plaintiff sought specific monetary damages from his aunt, namely the sale proceeds of $400,000, the *Wilkison* court relied on *Morrison* and concluded the plaintiff had an adequate legal remedy that "he lost by failing to file a creditor's claim in his grandmother's probate proceeding." (*Id.* at p. 832.)

Here, in contrast to the situation in both *Morrison* and *Wilkison*, petitioners in their fourth amended petition are not merely seeking a specific, readily-identifiable sum of money that currently is in a probate estate. Rather, petitioners are seeking to recover and transfer to the probate estate 50 percent of John's "net estate," as that term is defined in the MOA.

As noted, the MOA required John to transfer to petitioners an "amount equal to not less than fifty per cent (50%) of [his] net estate less property included in [his] net estate but not included in [his] probate estate and which, upon the death of [decedent], passes per stirpes to the decedents of their marriage living at the death of [decedent], outright or in trust as aforesaid." As further noted, "net estate" was defined in the MOA as the "taxable estate for federal estate tax purposes as currently defined in the Internal Revenue Code of 1954, as amended, *less* all costs and expenses of administration, funeral and burial expenses, debts paid by the estate of [decedent], *claims allowed against the decedent, or his . . . estate*, and federal estate or state inheritance and estate taxes and penalties and interest with respect thereto." (Italics added.)

13

The record shows that the parties fundamentally disagree on what assets should be included in John's "net estate" and that even Small recognized the term "net estate" was subject to interpretation. In a letter dated April 22, 1992,[4] Small wrote:

"I also discussed with you the concerns that [your CPA] John [Henkel] and I have relating to a possible challenge to the definition of 'net estate' *and the possible claim that your IRA should be included in the definition of net estate*. Although we believe that such an interpretation would be contrary to the terms of your 1977 agreement with Katherine Kasch, and the use of the term 'current' to refer to the state of the Internal Revenue Code at that time, *we do not know what interpretation might be given to same by any contesting party*. We have attempted to minimize the possibility of such a challenge or contest by the inclusion of no-contest type language in both your will and trust, pursuant to your request." (Italics added.)

Thus, unlike the claims in *Morrison* or *Wilkison*, petitioners' claim is based on a recovery of assets and turns on the meaning of "net estate," which, as noted, is subject to interpretation.

The instant case is also distinguishable from *Morrison* and *Wilkison* because petitioners allege in their fourth amended petition that objectors owed them a fiduciary duty *and* violated that duty in failing to "correctly and accurately" disclose the identity of assets in which petitioners held an interest. (See *Interactive Multimedia Artists v.*

_____

4    The record includes both the years 1992 and 1993 as the date of this letter. For convenience and recognizing it has no substantive bearing in this case, we will refer to the April letter as being written in 1992.

14

*Superior Court* (1998) 62 Cal.App.4th 1546, 1555-1556 [noting an action for breach of fiduciary duty is equitable even where the only remedy sought may be damages], citing *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 11.) For this separate reason, we conclude neither *Morrison* nor *Wilkison* inform our decision on this issue.

Lastly, we note that based on the definition of "net estate" in the MOA, it is clear neither John nor Katherine contemplated that their decedents (i.e., petitioners) would be deemed to be creditors of John's estate. As noted, "net estate" is defined in the MOA in part as the "taxable estate for federal estate tax purposes as currently defined in the Internal Revenue Code of 1954, as amended, less . . . *claims allowed against the decedent, or his . . . estate*." (Italics added.)

If, in fact, petitioners' claim was a true creditor's claim, as the court found, then it necessarily would have been *excluded* from the definition of "net estate" as set forth in the MOA, even though petitioners are seeking to recover certain assets *because* they contend such assets are within the meaning of the term "net estate." In our view, a finding petitioners' claim is a creditor's claim, which is a demand against the estate that must be paid or satisfied in advance of distribution, is irreconcilable with the definition of "net estate" set forth in the MOA. (See Civ. Code, § 1641 [noting the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably

15

practicable, each clause helping to interpret the other"].)[5] For this separate reason, we conclude petitioners' claim was not a creditor's claim within the meaning of section 9000.

C. *Petitioners Had Standing under Section 850*

As already noted, in *Kasch I* we concluded petitioners had standing under section 850, subdivision (a)(2)(C) to pursue their claim that certain assets held by objectors should have been included in John's "net estate."

Section 850, subdivision (a)(2)(C) states: "(a) The following persons may file a petition requesting that the court make an order under this part: [¶] . . . [¶] (2) The personal representative or any interested person in any of the following cases: [¶] . . . [¶] (C) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another."

Section 850 is contained in Part 19 of Division 2 of the Probate Code (governing the transfer of property claimed to belong to the decedent or another person). (*Kraus*, *supra*, 184 Cal.App.4th at p. 110.) "An action brought under [Part 19] may include

---

5      In light of our conclusion petitioners' claim was not a creditor's claim, we deem it unnecessary to reach objectors' contention that the applicable statute of limitations had run for "*filing a creditor's claim* and an action for breach of contract to make a testamentary disposition, after rejection of that claim." (Italics added.) In any event, the record in no way establishes a statute of limitations defense as a matter of law, as we already noted in *Kasch I*. Indeed, in *Kasch I* we concluded any applicable statute of limitations would not begin to run until petitioners became aware objectors were holding property in violation of the MOA. (*Kasch I*, *supra*, D060255 [at p. 6].) Petitioners contend they only became aware objectors were holding property subject to John's "net estate" *after* April 25, 2004, or within three years of filing their petition, when they (i) obtained a copy of John's estate tax return, which objectors had refused to provide them, and (ii) retained a tax expert, who had prepared returns under the applicable Internal Revenue Code as set forth in the MOA and who advised them for the first time that objectors were holding assets that should have been included in John's "net estate."

16

claims, causes of action, or matters that are normally raised in a civil action to the extent that the matters are related factually to the subject matter of a petition filed under [Part 19]." (§ 855.) " 'The probate court has general subject matter jurisdiction over the decedent's property and as such, it is empowered to resolve competing claims over the title to and distribution of the decedent's property.' " (*Kraus*, at p. 114.) " 'In the exercise of its legal and equitable powers [citations], a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim.' " (*Ibid.*) When, after hearing, the court is "satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing the personal representative or other fiduciary, or the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief." (§ 856.)

We note a section 850 petition is purely statutory. Nothing in the plain language of section 850, or in the remedies provided by section 856, condition relief on a finding that a remedy is legal or equitable or adequate or inadequate. And yet, on remand the court ruled that because petitioners allegedly were seeking money damages for John's breach of the MOA and because petitioners allegedly had an adequate legal remedy, they could not rely on section 850 to pursue their claims without first filing a creditor's claim.

Under the circumstances of this case, we conclude the court erred when it failed to exercise its statutory authority under section 850, subdivision (a)(2)(C) and reach the merits of the parties' dispute, particularly when section 856 clearly and unambiguously grants a probate court the power not only to order a conveyance or transfer to the person

17

entitled to the property in question, but also to grant other appropriate relief. (See § 856; see also *Kraus*, *supra*, 184 Cal.App.4th at pp. 113-114.) As explained by our high court, the "ultimate aim and purpose of administrative proceedings, including any special proceeding or contest to determine heirship, is to ascertain the persons entitled to share in the estate of the decedent and to decree distribution accordingly. It will not be questioned that justice and sound policy require that the estates of decedents be distributed to persons rightfully entitled thereto and that every concern and endeavor of a probate court should be to the accomplishment of that purpose." (*Edlund v. Superior Court of San Francisco* (1930) 209 Cal. 690, 695; accord, *O'Day v. Superior Court of Los Angeles County* (1941) 18 Cal.2d 540, 543 [noting "the object of the probate and administration proceedings is to secure distribution to the persons entitled to share in the estate"].)

Indeed, *if* the court following *Kasch I* had reached the merits of the parties' dispute (by exercising its statutory and/or broad equitable authority), and *if* the court had ruled against petitioners, then clearly there would have been no reason for the court to have dismissed petitioners' fourth amended petition for some alleged procedural irregularity, inasmuch as the probate estate currently has no assets and the relief petitioners seek in their fourth amended petition is the transfer of assets *into* the probate estate for distribution in accordance with the MOA.[6]

---

[6] In light of our decision, we deem it unnecessary to resolve any issues regarding the court's sustaining of a demurrer with leave to amend to petitioners' *third* amended petition.

18

DISPOSITION

The order of the court denying and dismissing petitioners' fourth amended petition is reversed.  Petitioners to recover their costs of appeal.


                                                          BENKE, Acting P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.