Filed 2/28/13  Estate of Focarino CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of CONCETTA FOCARINO, Deceased. | |
| JOHN W. FOCARINO, | G046963 |
| Plaintiff and Respondent, | (Super. Ct. No. 30-2010-00396828) |
| v. | O P I N I O N |
| SUSAN C. VOLPÉ, | |
| Defendant and Appellant. | |

Appeals from an order and a judgment of the Superior Court of Orange County, Mary Fingal Schulte, Judge; and Daniel J. Didier, Judge (retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Appeal from order dismissed; judgment affirmed.

Hershorin & Henry and Jean C. Wilcox for Defendant and Appellant.

Law Offices of Lawrence A. Strid, Lawrence A. Strid; Deily Law Firm, John P. Deily and John P. Glowacki for Plaintiff and Respondent.

Defendant and appellant Susan C. Volpé (Volpé) and plaintiff and respondent John C. Focarino (Focarino) are brother and sister and they are in a dispute over the assets of their deceased mother Concetta Focarino (decedent). Focarino was named executor of decedent's will and Volpé claimed to be the trustee of an inter vivos trust executed by decedent. Volpé filed objections to Focarino's petition for probate and Focarino challenged the validity of the trust. The parties ultimately entered into a memorandum of understanding (MOU) that Focarino claimed settled both matters. When Volpé claimed to rescind her signature on the MOU Focarino filed a motion under Code of Civil Procedure section 664.6[1] seeking to enforce it, which the court did.

One of the provisions of the order enforcing the MOU was a requirement that Volpé disburse the proceeds of some bank accounts. When she failed to do so Focarino filed a motion to amend the order and have a judgment as to the bank accounts entered to require her to pay the sums.

Volpé appeals, arguing the order was invalid for several reasons and that the judgment was improper because there was no provision in the order allowing for her to be personally liable to pay out the bank account proceeds. Focarino counters, arguing Volpé did not timely file an appeal from the order and that the judgment was authorized. We conclude Focarino has the better arguments. Because the appeal from the order is not timely it must be dismissed. The judgment is affirmed.

---

[1] All further statutory references are to this code except where otherwise stated.

2

Volpé, Focarino, and their brother, Charles Focarino, are the children of decedent. After decedent died in June 2010, Focarino filed a petition for probate, seeking to act as the executor. He attached a copy of decedent's will dated November 1995.

Volpé filed objections to the petition, claiming, in part, that Focarino had a conflict of interest because, among other things, he had taken decedent's jewelry and refused to return it to the estate and he should not serve without a bond. Volpé pleaded she was the trustee of decedent's living trust (trust) dated April 2010, with Volpé, Focarino, and Charles Focarino as equal beneficiaries. She alleged on information and belief the purpose of the trust was to "hold" "the proceeds from the sale of [decedent's] New York real property." Volpé also claimed she had deposited those proceeds in two accounts (credit union accounts) she held in joint tenancy with decedent. There was no intent to create survivorship rights in Volpé but the credit union accounts were set up only for convenience. As a result of Volpé's objections, the court set a mandatory settlement conference and a trial date.

In the meantime Focarino filed a petition to determine the validity of the trust. The petition alleged that at the time decedent executed the trust she was living with Volpé, who had taken her to a lawyer's office to sign the trust. It further alleged decedent had dementia at that time and was not competent to execute the trust. In addition, it pleaded Volpé exercised undue influence over decedent, with the intent of controlling all of her assets. It sought an accounting, of the funds in the credit union accounts.

The parties attended the mandatory settlement conference with a pro tem judge. Volpé, having discharged her lawyer, appeared in propria persona. Focarino and his attorney, John P. Deily (Deily), were present as well as was Charles Focarino. The three reached a settlement just before lunch time. The pro tem judge could not stay past

the lunch hour but gave Deily his notes so a written agreement could be prepared. Deily handwrote the MOU setting out all the agreed terms. The three siblings signed the document before they left the courthouse.

The title of the MOU referenced both the trust and the estate of decedent. Regarding the almost $278,000 in the credit union accounts, Volpé agreed to distribute a sum certain to the four children of Focarino and Charles Focarino and to pay out the balance equally to the three siblings. Volpé agreed Focarino would be appointed executor of decedent's estate with a $20,000 bond, marshal the estate's accounts, pay any debts, and distribute the net proceeds of the estate equally to the siblings. All other personal property had been distributed, with the exception of decedent's jewelry, which the three agreed to divide among themselves. Once these acts were performed, Focarino would dismiss the challenge to the trust. Except for the obligations set out in the MOU, the parties released each other from all claims, and agreed to cooperate and perform any acts necessary to fulfill the terms of the MOU. Volpé and Deily also signed a stipulation to admit the will to probate with Deily acting as executor.

Later that afternoon Deily's paralegal emailed a copy of the MOU and the pro tem's notes to Volpé, expressing Deily's gratitude for Volpé's help in resolving the matter and explaining that Deily would send a formal settlement agreement to her the next week. Volpé responded that she was unable to download the attachments.

The next day Volpé sent a letter to Deily purporting to rescind her signature on the MOU. She questioned the "legality" of the MOU based on section 2017.310, subdivision (a) regarding elder abuse and claimed, among other things, she was sick and under duress to sign the MOU, and some of the terms were "unfair" and "unconscionable."

Deily filed the stipulation to admit the will to probate and the court did so. He also filed a motion to enforce the MOU pursuant to section 664.6. Volpé, represented by counsel, opposed it on several grounds, including that several material terms were not

4

included, the MOU was not intended to be a settlement, she signed it under duress, and she had effectively rescinded it. After a lengthy hearing the court granted the motion and signed an order (order) enforcing the MOU. It found there was an agreement with sufficiently clear provisions and at three separate times ruled there was no duress. The court ordered Volpé to pay $2,500 in attorney fees. It also retained jurisdiction of the case for any necessary enforcement.

Volpé, at this point again representing herself, filed a motion for reconsideration, claiming the arguments Deily made at the hearing on the motion contained new evidence. The court denied the motion, finding there were no new facts, and awarded Focarino $4,350 in attorney fees. Four months after the order was entered, Volpé's husband, Thomas Volpé, filed a verified complaint for declaratory relief alleging that he, Volpé, and decedent had held the money in the credit union accounts jointly and that after decedent's death he became the "sole owner" when the money was transferred to an account held in his name only.

Seven months later Focarino brought a motion to amend the order based on Volpé's failure to pay out the funds from the credit union account and pay the attorney fees ordered. The court entered a judgment amending the order in favor of Focarino and Charles Focarino in the sum of almost $101,300, representing the funds in the credit union accounts, against Volpé, plus prejudgment interest, and attorney fees of $3,590.

DISCUSSION

1. *Timeliness of Appeal of Order on MOU*

Focarino claims Volpé's appeal from the order is not timely and therefore must be dismissed. He points out that he served a notice of entry of judgment and a file stamped copy of the order on September 28, 2011 and Volpé did not file her notice of

5

appeal until May 18, 2012. Volpé does not dispute the service and filing dates but asserts the order was only interlocutory and thus not appealable.

Pursuant to California Rules of Court, rule 8.104(a)(1)(B), a notice of appeal must be filed no later than 60 days after service of a notice of entry of judgment or a file-stamped copy of the judgment and a proof of service. If a notice of appeal is not timely filed we have no discretion to proceed with the appeal but must dismiss it. (Cal. Rules of Court, rule 8.104(b).) The term judgment as used in this rule applies to an appealable order. (Cal. Rules of Court, rule 8.104(e).)

Section 904.1, subdivision (a)(10) provides a party may appeal "[f]rom an order made appealable by the provisions of the Probate Code." Probate Code section 1300, subdivision (k) authorizes an appeal from an order "[a]djudicating the merits of a claim made under Part 19 (commencing with Section 850) of Division 2." Probate Code section 850, subdivision (a)(3)(A) authorizes "any interested person" to file a petition seeking a court order "[w]here the trustee is in possession of, or holds title to, . . . personal property, and the property, or some interest, is claimed to belong to another." An "interested person" includes "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent . . . ." (Prob. Code, § 48, subd. (a).)

Although the parties argue about some broader issues, the essence of this appeal is Volpé's agreement and failure to transfer the funds from the credit union accounts to Focarino, their brother Charles Focarino, and her brothers' children. These funds were the proceeds from the sale of real property that was an asset of decedent's purported trust, of which Volpé was the alleged trustee. Focarino, as an interested party, filed a petition to enforce the MOU seeking an order to have the funds in the credit union accounts distributed.

Though the stated statutory basis for the petition was section 664.6 and not Probate Code section 850, the practical effect was the same. It was a petition by another

6

who claimed an interest in the credit union accounts seeking an order to have Volpé, who had possession of the credit union accounts as a self-entitled trustee, disburse the funds. This meets all the requirements of Probate Code section 850, subdivision (a)(3)(A) and was the functional equivalent of it. As such, it was an appealable order pursuant to Probate Code section 1300, subdivision (k).

Moreover, under section 664.6, when a motion enforcing a settlement is granted, the court is authorized to enter judgment thereon. Thus, had the court enforced the MOU outside of the probate court and entered a judgment, Volpé would have had the same 60-day time period to appeal. (Cal. Rules of Court, rule 8.104(a)(1)(B).)

We reject Volpé's assertion the order was interlocutory and not appealable because it did not "conclude the probate proceeding." (Boldface and capitalization omitted.) Neither Probate Code section 850 nor Probate Code section 1300 requires the order to have concluded the litigation to be appealable. Probate Code section 1300, subdivision (k) authorizes an appeal of an order "[a]djudicating the merits of a claim made under" section 850. Probate Code section 850, subdivision (a)(3)(A) allows a court to make an order where there is a claim made to recover property held by a trustee. There is no language about resolution of an entire probate or trust matter.

Under either Probate Code section 1300 or where there is a judgment after a motion made under section 664.6, Volpé should have appealed within 60 days after Focarino served the notice of entry of judgment and accompanying documents. She did not and the time period for her to do so passed. Therefore the appeal from the order must be dismissed and we cannot consider any of the arguments she makes challenging its validity.

*2. Validity of Judgment*

Volpé also appealed from the judgment entered resulting from the amendment of the order. She claims "it was in excess of the terms of the settlement the

7

parties had agreed upon" because it did not contain any "clear" language as to remedies if she failed or was "unable" to distribute the funds from the credit union accounts, including personal liability on her part. She maintains that in amending the order and entering the judgment the court "added a material term" to the order. We are not persuaded.

Volpé agreed that the money would be distributed to Focarino's and Charles Focarino's children and the balance to three siblings, and that is what the order unambiguously provides. The record is unclear as to why she did not comply. The only information we have is in Thomas Volpé's declaratory relief action where he alleges he was one of the owners of the joint tenancy account and now is the sole owner of the funds. In her verified objections to the petition for probate, Volpé stated she and decedent were the joint owners of the funds in the credit union accounts; no mention was made of Thomas Volpé. She also stated she "believe[d]" the accounts were created for decedent's "convenience" and not to give Volpé a right to the money as the sole survivor.

Further, in opposition to the motion to amend the order Volpé made no mention of Thomas Volpé's action or that he owns the funds.[2] She did not claim she was not required to make the payments. She did not deny she had access to the credit union accounts or that Focarino and Charles and their children are entitled to payment as set out in the order. Nor does she dispute it in her briefs. Rather, she makes a technical argument the order failed to set out consequences for nonpayment and the court has no jurisdiction to materially change the terms of the order.

---

[2] Although in a footnote in the reply brief, Volpé states "title[to the funds in the credit union accounts] cleared and passed to [Volpé] and Thomas [Volpé] upon proof of [decedent's] death by operation of law." This contradicts, at least inferentially, the verified statements Volpé made in her challenge to the probate petition.

8

Thus, except for the unexplained claim of Thomas Volpé that he has possession of and owns the funds, the evidence before us reveals no reason why Volpé has not paid and cannot pay out the credit union funds. Obviously the probate court has no jurisdiction over Thomas Volpé's action, but neither does it have an obligation to base a decision as to the funds with his claim in mind. Thomas Volpé's claim does raise the inference, however, that Volpé, as the alleged trustee, has not taken proper care of the funds she agreed were held for the beneficiaries of the purported trust but instead transferred them to her husband. In any event she is liable to pay the money as ordered. In amending the order and entering the judgment the court merely gave Focarino a tool to enforce the order and have the money disbursed. And there is authority for it.

"[T]he probate court is a court of general jurisdiction [citations] with broad equitable powers. [Citations.] . . . [It] may apply general equitable principles in fashioning remedies and granting relief. [Citations.] . . . 'It will not be questioned that justice and sound policy require that the estates of decedents be distributed to persons rightfully entitled thereto and that every concern and endeavor of a probate court should be to the accomplishment of that purpose.' [Citations.]" (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 114.)

In addition to the equitable powers of the probate court, all courts have powers to enforce orders. Section 128 gives every court the authority "[t]o compel obedience to its judgments[ and] orders . . . ." (§ 128, subd. (a)(4).) In addition a judge has the power "[t]o compel obedience to his [or her] lawful orders as provided in [the Code of Civil Procedure.]" (§ 177, subd. (2).) Finally, "[w]hen jurisdiction is . . . conferred on a [c]ourt . . . , all the means necessary to carry it into effect are also given; and . . . any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (§ 187.)

Entry of the judgment has nothing to do with the addition of another term to the order. It is merely a method of enforcing it. And all Volpé has to do is pay out the

funds. That they might be held by her husband should not prove to be an obstacle since, according to her own verified objection to the probate petition, she had control of the money and Thomas Volpé was not even on the account.

We reject Volpé's arguments about enforcement of the terms of the MOU itself. As discussed above those claims are barred due to the failure to timely appeal from the order.

## DISPOSITION

The appeal from the order is dismissed. The judgment is affirmed. Plaintiff is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

10