Filed 6/11/26  Casanova v. Patriot Holdings CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| DAVID CASANOVA, as Trustee, etc., | B342032 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. 17STPB02712, BC643445) |
| v. | |
| PATRIOT HOLDINGS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jessica A. Uzcategui, Judge.  Affirmed.

The DLJ Law Firm and Dorian L. Jackson for Plaintiff and Appellant.

Law Office of Alan S. Yockelson, Alan S. Yockelson, Stephen M. Vasil; Jeffer Mangels & Mitchell and John S. Cha for Defendant and Respondent.

\* \* \* \* \* \*

In this appeal, a trust that was awarded $330,000 in double damages under Probate Code section 859[1] due to financial elder abuse committed against its trustor asks us to raise that award to more than $3 million. Specifically, the trust argues that (1) the probate court was obligated to value the "property recovered" as the full fair market value of the property, even though the trustor retained all of the property except for the right to alienate it; and (2) section 859's double penalty must be further trebled under Civil Code section 3345. We reject both arguments, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

On November 3, 2016, Corrine Casanova (Corrine) called the phone number on a flyer left at her house in Baldwin Park, California, from a company offering to buy houses "as is." The next day, Cory Evans—a co-owner and representative of Patriot Holdings, LLC (Patriot Holdings)—arrived at the property with a residential purchase agreement and joint escrow instructions (the contract). Evans examined the property and offered to purchase it for $275,000. At the time, the property was valued at $440,000. After meeting with Evans for a little over an hour, Corrine[2] signed the contract.

---

[1]  All further statutory references are to the Probate Code unless otherwise indicated.

[2]  Because more than one individual shares the same last name, we refer to them by their first names to avoid confusion. No disrespect is intended.

2

At that time, the property was held by the Corrine Casanova Living Trust (the trust), and Corrine was the trustee. Also by that time in her life, Corrine had started exhibiting symptoms "consistent with Alzheimer's disease" and her family had made the decision to move her into an elder care facility.

Corrine passed away on November 23, 2016, less than three weeks after signing the contract with Patriot Holdings. Her son, David Casanova (David), became the successor trustee of the trust; he was unaware that his mother had agreed to sell the property until a few weeks later, when he received a packet of paperwork at the property and a phone call from an attorney representing Patriot Holdings. The attorney demanded that David perform the contract, and David refused.

## II.    Procedural History

### A.    *Litigation commences*

On December 12, 2016, Patriot Holdings sued Corrine, individually and as trustee of the trust, for breach of contract (the civil case). The same day, Patriot Holdings recorded a lis pendens on the property.

On March 28, 2017, David, as successor trustee of the trust, filed a cross-complaint in the civil case, and filed a petition pursuant to Probate Code section 850 (the probate case). Among other claims, David alleged that the contract was the product of undue influence and that Patriot Holdings had committed financial elder abuse.

The superior court found the civil and probate cases to be related and assigned both to the probate division.

3

**B.** *The probate court expunges the lis pendens, Patriot Holdings dismisses its complaint, and the property is sold to a third party*

On December 3, 2019, David filed a motion to expunge the lis pendens. The probate court granted the motion over Patriot Holdings' objection, and ordered the lis pendens expunged on January 9, 2020, just over three years after it was recorded.

Patriot Holdings ultimately dismissed its complaint in July 2020 without re-recording a lis pendens.

In August 2020, David sold the property to a third party for $510,000.

**C.** *The probate court holds a bench trial on David's claims and awards the trust $330,000*

The probate court held a bench trial on David's cross-complaint and probate petition over a period of nine days in June, July, August, September, and October 2023. After hearing testimony from eleven witnesses and considering the parties' closing briefs,[3] the probate court issued a tentative statement of decision, entertained objections, and then issued a final statement of decision.

In the final statement of decision, the probate court rejected David's claims for fraud, breach of fiduciary duty, and unfair competition, but found that section 21380(a)(1)'s presumption of undue influence applied and that Patriot Holdings had committed financial elder abuse by means of undue influence pursuant to Welfare and Institutions Code section 15610.30, subdivision (a)(3) because it had "deprived [Corrine] of

---

[3]     On April 2, 2026, David filed a motion to augment the record with the parties' closing briefs and the first amended probate petition. That motion is granted.

4

her right to dispose of the Property during the period of time between the filing of the Complaint [and Lis Pendens] in December 2016 and the expungement of the Lis Pendens in January 2020." The court then ruled that the "value of the property" taken (and hence the "value of the property recovered") was "the difference between the $440,000 appraised value of the Property at the time of the Contract . . . and the $275,000 purchase price of the Contract . . . , or $165,000." Pursuant to section 859, the court awarded David double that amount—namely, $330,000. The court declined to award punitive damages under Civil Code section 3294 due to a lack of evidence of fraud, oppression, or malice; it also declined to award treble damages under Civil Code section 3345 on forfeiture grounds because David only made a "brief argument" on the issue in his closing brief.

The probate court entered judgment on August 30, 2024.

### D. *David appeals*

David filed a timely notice of appeal on October 25, 2024. Patriot Holdings did not cross-appeal.

## DISCUSSION

In this appeal, David argues that the probate court erred in (1) not treating the "value of the property recovered" under section 859 as the full fair market value of the property (that is, $510,000), and (2) not trebling the section 859 award of $1,020,000 to $3,060,000 under Civil Code section 3345. Because the resolution of these arguments turns on the interpretation of these statutes, our review is de novo. (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658.)

## I. Section 859 Award

As pertinent here, section 859 provides that, after a court "finds that a person has . . . taken . . . property . . . through the commission of elder . . . financial abuse," that person "shall be liable for twice the *value of the property recovered* by an action under this part [namely, sections 850 through 857]." (§ 859, italics added.) Because Patriot Holdings did not file a cross-appeal, the sole issue before us is the one posed by David's appeal—namely, whether the probate court was obligated to use the full value of the property recovered (namely, the sales price of $510,000) in calculating the double damages award under section 859.

We conclude that the probate court did not err in declining to use $510,000 as the "value of the property recovered." Had Corrine quitclaimed the entire property to Patriot Holdings, then David would be correct because the *entire* property would have been taken, and the value of the *entire* property—namely, the $510,000 sale price—would have been recovered. But that is not what happened. Corrine agreed to sell the property for $165,000 less than it was worth at the time. Had that transaction been consummated, Patriot Holdings would have taken $165,000 from Corrine, and the value of the property subsequently recovered would have been that same $165,000 amount. Yet the transaction was never consummated, and Patriot Holdings never acquired (or took) the property; instead, it recorded a lis pendens that clouded title to that property for a little over three years. Because the right to alienate property is one of the many "sticks" in the "bundle" of rights attendant to property ownership, Patriot Holdings took that particular species of property right from Corrine, which was recovered when the lis pendens was

6

expunged. (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 479-480.) But the *value* of the right to alienate that Patriot Holdings clouded for three years is not the value of the entire property; put differently, the value of the stick is not the same as the value of the entire bundle that would have come with the sale of the property. The probate court did not err in declining to equate the value of the stick with the value of the whole bundle of sticks; doing so would have *overvalued* the property actually recovered from Patriot Holdings.

David responds with what boils down to three arguments.

First, David argues that "[t]he real property's sales price conclusively established its fair market value, and the court had no discretion to substitute a lesser figure." We disagree. As explained above, David would be correct if Patriot Holdings had acquired the property from Corrine without having a concurrent duty to pay her $275,000. But that is not what happened here. In declining to award the full fair market value of the property, the probate court did not, as David decries, "impermissibly rewr[i]te the statute"; the court merely applied the statutory language and gave effect to the word "recovered." (See *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [court is required "to give effect and significance to every word and phrase of a statute"].)

Second, David argues that the probate court "incorrectly valued" the property by considering its value at the time of the taking rather than at "the time it was recovered," thus ostensibly erred by looking at the amount Patriot Holdings was to pay Corrine in November 2016 and the value of the property in November 2016. Regardless of whether the value of the right to alienate that was taken and recovered equals that difference or some other value, it most certainly does not on the facts of this

7

case equate to the *whole* value of the property at the time of the sale in 2020.

Third and finally, David argues that our interpretation "undermines the statute's core purpose:  to punish and deter the looting of estates" belonging to elders.  To be sure, section 859's penalty is "punitive in nature" (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 112) and is therefore designed "'to motivate compliance with the law and punish wrongdoers'" (*Moramarco v. Nowakoski* (2026) 119 Cal.App.5th 739, 745 (*Moramarco*)).  But that purpose does not empower us to ignore the plain text of the statute, which looks to the value of what was actually taken and ultimately recovered.

## II.     Trebling of Award Under Civil Code Section 3345

Civil Code section 3345 (hereafter "section 3345") applies in actions brought on behalf of or for the benefit of senior citizens in certain circumstances and provides that, "[w]henever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter, *and the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion*, the trier of fact shall consider" three enumerated factors "in determining the amount of fine, civil penalty or other penalty, or other remedy to impose."  (Civ. Code, § 3345, subds. (a) & (b), italics added.)  Where the trier of fact "makes an affirmative finding in regard to one or more of the factors," section 3345 authorizes imposition of the fine or penalty "in an amount up to three times greater than authorized by the statute."  (*Ibid.*)

David argues that the probate court erred in not trebling the section 859 penalty (thereby resulting in a sextupling of the value recovered).  We conclude there was no error. By its plain

language, section 3345 only operates to treble a fine or penalty where "the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion." (Civ. Code, § 3345, subd. (b).) But section 859 "imposes a strict and mandatory penalty structure" where "[t]he probate court has no discretion regarding the calculation of the amount of the statutory penalty." (*Moramarco*, *supra*, 119 Cal.App.5th at p. 746.) Because the amount of section 859's penalty is not "subject to the trier of fact's discretion," it is not subject to trebling under section 3345. (Civ. Code, § 3345, subd. (b).)

David's only argument to the contrary is that section 859 "is precisely the type of statute contemplated by" section 3345 because it "'is designed to punish and deter specific misconduct.'" (Quoting *Estate of Ashlock* (2020) 45 Cal.App.5th 1066, 1076.) This argument ignores that section 3345 has *two* prerequisites: (1) that the remedy be designed to punish or deter; *and* (2) that the amount of the remedy be "subject to the trier of fact's discretion." (Civ. Code, § 3345, subd. (b).) We cannot ignore the second prerequisite, which is not met by section 859. (See *Clark v. Superior Court* (2010) 50 Cal.4th 605, 614 [statutory interpretations should not render a phrase "meaningless surplusage"].)

9

## DISPOSITION

The judgment is affirmed.  Each party is to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR