Filed 3/29/24  Richardson v. Total Lender Solutions CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT RICHARDSON, Individually and as Representative, etc., | H050729 (Monterey County Super. Ct. No. 16CV002776) |
| Inteveners and Appellants, | |
| v. | |
| TOTAL LENDER SOLUTIONS, INC., et al., | |
| Defendants and Respondents. | |
| CAROL GARRARD, et al., | H050802 (Monterey County Super. Ct. No. 16CV002776) |
| Plaintiffs and Appellants, | |
| v. | |
| TOTAL LENDER SOLUTIONS, INC., et al., | |
| Defendants and Respondents. | |

This is the sixth in a series of lawsuits filed in Monterey County involving the subject property:  a single-family dwelling in Seaside, California (the Property).  The Property was previously owned by Alice Richardson, who died intestate in November 2003.  The appellants are Carol Garrard (Alice's daughter, heir, and the administrator of her estate), Kenneth Garrard (Carol's husband), and Robert Richardson (Carol's brother,

who was also Alice's heir). We shall refer to Carol, Kenneth, and Robert jointly as "Plaintiffs."

In this appeal, we review the trial court's order denying Plaintiffs' second motion to vacate a default judgment entered against Carol and Kenneth Garrard in 2015 (Default Judgment) in an action in which some of the respondents sought specific performance of a settlement agreement they entered into with the Garrards in 2011 to settle an action the Garrards had filed against them in 2008 alleging wrongful foreclosure. All of this litigation relates back to a loan that Carol, as administrator of her mother's estate, obtained from some of the respondents in 2006, which was secured by a deed of trust on the Property. In this action (Monterey County Superior Court case No. 16CV002776), Plaintiffs seek, among other things, to set aside the Default Judgment.

Plaintiffs contend that the trial court erred when it denied their second motion to vacate, which asserted that the Default Judgment was void for lack of jurisdiction because the nonprobate court that held the prove-up hearing and entered the Default Judgment did not have jurisdiction over the specific performance action (Monterey County Superior Court case No. M128920). They assert that the specific performance action was subject to the "exclusive jurisdiction" of the "probate court" and should have been filed in the probate division of the Monterey County Superior Court because the loan was entered into as part of the proceedings to probate Alice's estate.

We disagree and will affirm the order denying the motion to vacate. We rely on the probate court's order for final distribution of the estate entered in December 2006, which transferred title to the Property to Carol as her sole and separate property subject to all encumbrances associated with the Property, which included respondents' loan. That order was not appealed and when it became final in June 2007, the probate division lost jurisdiction over the Property. The fact that Carol never obtained an order discharging her as administrator of the estate does not change our analysis. Many reasons support the conclusion that the trial court did not err when it determined that the nonprobate, civil

2

division of the court had jurisdiction over the specific performance action and denied the motion to vacate.

## I. FACTS AND PROCEDURAL HISTORY

### A. *The Probate Action*

Alice's husband and two of her seven children had predeceased her. At the time of her death, Alice's heirs included her five surviving children (plaintiff and appellant Carol Garrard, intervener and appellant Robert Richardson, Clarence Richardson, Lynda Richardson, and Renee Richardson) and two granddaughters (Cherrie Richardson and Valencia Whittington, the children of Alice's deceased daughter, Terry Cotton). (We will refer to Alice's heirs and her son-in-law (plaintiff and appellant Kenneth Garrard) by their first names, and to Carol and Kenneth jointly as the Garrards.)

In April 2004, Carol petitioned for letters of administration and for authorization to administer her mother's estate under the Independent Administration of Estates Act in Monterey County Superior Court case No. MP17109 (Probate Action).[1] Each of the heirs consented to Carol's appointment as administrator, and the court sitting in probate granted the petition. The only assets of the estate were the Property—which was valued at $325,000 in 2004—and $1,000 worth of furniture.

---

[1] Plaintiffs' designation of the record on appeal included the entire file in the Probate Action. It was improper to designate the probate file as part of the record on appeal since the appeal is not taken from a judgment or order in the Probate Action. The appropriate procedure would have been to ask this court to judicially notice the record in the Probate Action. On our own motion we will judicially notice pertinent portions of the record in the Probate Action. (Evid. Code, §§ 459, subd. (a); 452, subd. (d).) The only document in the probate file that is of "substantial consequence to the determination" of the appeal is the probate court's order for final distribution of the estate, a copy of which was filed in the action at issue (Monterey County Superior Court case No. 16CV002776). (*Id.*, §§ 455, 459, subd. (c).) Since a copy of the order for final distribution was part of the record below, there was no need to obtain supplemental briefing from the parties regarding the propriety of judicially noticing it. (*Id.,* § 459, subd. (c).)

3

The Property was red-tagged after Alice's death, apparently due to a fire. In October 2006, Carol, as administrator of her mother's estate, obtained a loan for $265,000 secured by a first deed of trust against the Property. The loan was funded by six individual investors (Investors)[2] and brokered by David Shapiro and USA Mortgage. The loan documents included a promissory note executed by Carol as administrator of the estate and a first deed of trust. The loan was interest-only for 12 months; the note bore an interest rate of 12.5 percent, included a penalty rate of 17.5 percent in the event of default, and provided for a balloon payment (the entire principal plus any unpaid interest) that was due on October 16, 2007. (We shall hereafter refer to this loan as the Investors' Loan.) The promissory note for the Investors' Loan was secured by a first deed of trust that was recorded on October 30, 2006.

On November 14, 2006, Carol filed a verified first and final report as administrator of her mother's estate. Carol advised the probate court that she had used approximately $150,000 of the proceeds from the Investors' Loan to repair the Property to make it habitable again and increase its value in the event it was ever sold. The remainder of the Investors' Loan was used to pay the costs of obtaining the loan, for estate administration (up to $9,520 in attorney fees, up to $2,000 for closing expenses, and $9,520 to Carol as administrator), and to pay Alice's granddaughters $20,000 each as their inheritance.

Carol told the probate court that the heirs wanted to keep the Property in the family and stated that the only one who had the ability to purchase the Property from the estate was Carol. To that end, Carol proposed executing a second promissory note in favor of her siblings (Clarence, Lynda, Robert, and Renee) in the amount of $180,000 with an interest rate of 6.5 percent as their distributions ($45,000 each) in the Probate

---

[2] The Investors were Chris Podlewski, Michael and Susan Reed (husband and wife), Edward Von Deutsche, and Harold and Judith Levy (husband and wife).

Action. The note was to be secured by a second deed of trust on the Property. (We shall hereafter refer to this promissory note as the Siblings' Note.)

On December 15, 2006, the probate court held a hearing on Carol's first and final report, approved the plan for distribution, and entered its order for final distribution. Carol executed the Siblings' Note that same day. The court's order for final distribution provided that "Title to [the Property] shall be held by Carol . . . as her sole and separate property. She shall assume the property subject to all encumbrances associated with it as of the date of this Order," and that the Siblings' Note was to be secured by a *second* deed of trust against the Property.

On December 19, 2006, Carol filed two receipts on distribution executed by Alice's granddaughters Cherrie and Valencia, acknowledging receipt of $20,000 each as their shares of the estate. There has been no further activity in the Probate Action since that date.

On June 11, 2007, a deed of trust related to the Siblings' Note was recorded against the Property. No one appealed the probate court's order "for final distribution," and that order became final no later than June 13, 2007, which was 180 days after entry of the order. (Cal. Rules of Court, rule 8.104(a)(1)(C).) Two days later, on June 15, 2007, Carol recorded a grant deed in which she added her spouse Kenneth to the title.

### B. First Nonjudicial Foreclosure and Unlawful Detainer Action

Carol defaulted on the Investors' Loan. The Investors initiated a nonjudicial foreclosure, purchased the Property at the trustee's sale in November 2007, and title passed to the Investors pursuant to a trustee's deed upon sale. The Garrards continued to reside at the Property after the sale. In February 2008, the Investors filed an unlawful detainer action (Monterey County Superior Court case No. M89010) against Carol.

5

### C. *Wrongful Foreclosure Action and 2011 Settlement*

In response, in March 2008, the Garrards filed an action for wrongful foreclosure (Monterey County Superior Court case No. M90047, hereafter Wrongful Foreclosure Action) against the Investors and others based on alleged illegalities and usury in the loan process. They alleged, among other things, that just under $115,000 of the loan was for wrongful or unlawful fees, commissions, or impound interest and that Shapiro and USA Mortgage were not licensed to do business in California. The Investors subsequently dismissed the unlawful detainer action.

The parties settled the Wrongful Foreclosure Action in June 2011. The recitals in the settlement agreement stated that the original Investors' Loan was wrongfully brokered and unenforceable. As part of the settlement, the parties agreed to new loan terms, including lowering the principal amount from $265,000 to $200,000 and lowering the interest rate from 12.5 to 5 percent. The written settlement agreement provided that the parties "shall execute and record a new note and trust deed" and required the parties to open a new escrow, prepare a new promissory note, and record certain documents required to restore title to Carol, including a rescission of the trustee's deed upon sale. The parties agreed that the new loan would have a 12-month term that commenced upon Carol's execution of the new promissory note. The Garrards filed a notice of settlement in the trial court and dismissed the Wrongful Foreclosure Action with prejudice on July 1, 2011, before the acts required by the settlement agreement were completed.

### D. *Tax Sale Action*

Neither the Garrards nor the Investors paid the property taxes on the Property between 2008 and 2012. In February 2013, after the county filed a property tax lien and notice of intent to sell, the Garrards filed a ' "pre-emptive" ' lawsuit against the county, the Investors, and others (Monterey County Superior Court case No. M122093) to challenge the tax assessment and "fend off the tax sale" (hereafter Tax Sale Action). In

6

March 2013, the Investors assisted the Garrards to establish standing by recording a notice of rescission of the 2007 trust deed upon sale. The notice of rescission stated that its express purpose was "to return the priority and existence of all lienholders to the status quo ante that existed prior to the Trustee's Sale." The Garrards paid the taxes and averted the tax sale.

The Investors contended that given the delays in completing the documents for the new loan, and in consideration for the Investors' agreement to rescind the 2007 trustee's deed upon sale, the parties orally agreed to a modification of the settlement agreement, which provided that the new loan would be subject to the original 2006 deed of trust instead of a new deed of trust, and thus the Investors' Loan would maintain its priority over the Siblings' Note. Carol's verified pleading in a subsequent action, wherein she alleged that as part of the settlement agreement, she had agreed "to execute a new note secured by the same deed of trust (in effect a 'loan modification')," confirmed this assertion.

The Garrards' attorney, William Look, withdrew from representing them in January 2014. At that time, the parties were still negotiating the terms of the new promissory note required by the settlement agreement in the Wrongful Foreclosure Action. The trial court dismissed the Tax Sale Action with prejudice in March 2016, noting that after the Garrards' counsel withdrew, nothing further was filed in the case.

### E. Investors' Specific Performance Action and Default Judgment

In August 2014, the Investors filed an action against Carol (both in her individual capacity and as administrator of her mother's estate) and Kenneth for specific performance of the settlement agreement and other relief (Monterey County Superior Court case No. M128920, hereafter the Specific Performance Action). The Specific Performance Action alleged that the Garrards had been living in the Property "payment free and with the benefit of" the Investors' Loan since 2007, that the Garrards had

7

deceived the Investors into rescinding the 2007 trustee's deed upon sale, and then refused to sign a new promissory note as required by the settlement agreement. The Garrards did not answer or otherwise respond to the Specific Performance Action.

The Investors took Carol's default in the Specific Performance Action in October 2014. They took Kenneth's default on May 8, 2015, and obtained the Default Judgment against both Carol and Kenneth on May 15, 2015, after a prove-up hearing. The Investors did not seek monetary damages, costs, or attorney fees at the default hearing. The Default Judgment included findings that the new promissory note drafted by the Investors in February 2013 was a valid obligation of the Garrards for all purposes, including nonjudicial foreclosure, and that the new note was effective as of March 11, 2013. (Plaintiffs contend this note was "fabricated.") The court ordered the Garrards to sign the new note and held that their failure to sign the new note did not invalidate it. The Garrards did not challenge the Default Judgment in the Specific Performance Action or appeal the Default Judgment.

### F. *Second Nonjudicial Foreclosure and Subject Litigation*

Based on the Default Judgment and the Garrards' failure to make any payments after March 2013, the Investors recorded a notice of default and election to sell in June 2016. The Garrards filed the instant lawsuit (Monterey County Superior Court case No. 16CV002776) in September 2016, seeking to prevent the foreclosure and challenge the Default Judgment. After the trial court denied the Garrards' ex parte request to enjoin the foreclosure sale, the Investors proceeded with a nonjudicial foreclosure, and the Property was sold at a trustee's sale on October 11, 2016, to Ouita Martin, LLC (Martin).

Carol's brother Robert later intervened in the action. The operative pleadings were the Garrards' second amended complaint (SAC) and Robert's first amended complaint in intervention (FACI). In the 12 or more years after final distribution in the Probate Action, Carol and Robert's other siblings had passed away. Robert therefore

8

filed the FACI for "himself, and as heir and representative of the small Estates of Clarence . . . , Lynda . . . , [and] Renee, deceased."

The named defendants in the SAC were the Investors; Total Lender Solutions, Inc. (TLS), the trustee under the deed of trust; Martin; and "All Persons Unknown" claiming any right in the Property (jointly Defendants). The SAC alleged causes of action for: (1) relief from the Default Judgment under the one action rule (Code Civ. Proc., § 726) and Code of Civil Procedure section 580, (2) quiet title, (3) breach of contract and an accounting under the deed of trust, (4) unjust enrichment, and (5) fraud. Among other things, the instant action seeks to collaterally attack the Default Judgment.

Robert's FACI named the same defendants as the SAC and added two more defendants: Kathleen Mahan (the Investors' counsel in the Specific Performance Action and other cases) and Randall Newman (the owner and president of TLS). The FACI contained causes of action for (1) quiet title, (2) declaration of lien priority and entitlement to sale proceeds, (3) fraud and deceit, and (4) conversion of foreclosure sale proceeds.

### G. First Motion to Vacate and Prior Appeal

In November 2019, the Garrards filed a motion to vacate the Default Judgment. They invoked the court's power under Code of Civil Procedure section 473, subdivision (d) to set aside a void judgment by direct or collateral attack, or by independent equitable action. Among other things, they argued that, under Code of Civil Procedure section 580, they did not have proper notice of the relief that could be granted in the Default Judgment to support an inference that they were consenting to that judgment by not responding to the complaint.

Several of the Investors opposed the motion, and Plaintiffs filed a reply. The trial court denied the motion to vacate, and Plaintiffs appealed. This court affirmed the order

9

denying the first motion to vacate. This court issued its remittitur on July 28, 2022, and the matter was returned to the superior court for further proceedings.

## H. Subsequent Proceedings in Trial Court

In August 2022, the Garrards voluntarily dismissed their first, third, fourth, and fifth causes of action without prejudice, leaving only their quiet title claim outstanding.

At a hearing on September 21, 2022, the trial court denied Defendants' motion for judgment on the pleadings directed at Robert's FACI. In a nutshell, the court found that Defendants' motion failed to address the elements of each cause of action and the multiple theories alleged in the FACI. The court also rejected Defendants' collateral estoppel argument, reasoning that the Garrards and Robert "appear to have been in more of a creditor/debtor relationship than a mutual type of relationship" and that since their interests "were not sufficiently similar," it would not be fair to bind Robert with the result obtained by the Garrards.

The court noted in its minute order that "as for [the] statutory notice violation, the FACI incorrectly alleges that Carol Garrard as Administrator was discharged in 2007. The signed order of discharge appears not to have occurred. Carol continues to claim the title of Administrator throughout the various suits, including the current litigation. There was no discharge of Carol Garrard, so notice given to the estate attorney may have been proper."

## I. Second Motion to Vacate

The court's comments regarding Carol's failure to obtain an order discharging her from her role as administrator of her mother's estate prompted Plaintiffs to file a second motion to vacate the Default Judgment in October 2022, more than six years after the instant action was filed. This time, Plaintiffs argued that the Default Judgment was void because the civil department of the superior court that entered the Default Judgment did not have jurisdiction to act since the probate department had exclusive jurisdiction over

10

the issues presented in the Specific Performance Action.  Plaintiffs argued that since the Investors, the Garrards, and Robert all acquired their interests in the Property as part of the Probate Action and their interests were traceable to the Probate Action, jurisdiction was proper in probate court.  They argued that since the Default Judgment was entered against Carol in her capacity as administrator of the estate, involved a loan that was used to repair estate property and pay other estate expenses, and was secured by estate property, the probate court had exclusive jurisdiction over the matter and the Default Judgment entered by a nonprobate judge was therefore void for lack of jurisdiction. Plaintiffs argued that by suing Carol as administrator, the Investors were required to reopen the estate and proceed as creditors in probate.

About this time, since the case had been reassigned to Judge Panetta, Plaintiffs also filed a motion asking the court for a sua sponte ruling to "correct the erroneous prior rulings by Judge Wills and Judge Anderson refusing to enforce the one action rule."

Some Investors, Newman, and TLS opposed the second motion to vacate.[3]  They argued that they obtained the Default Judgment to enforce the 2011 settlement agreement, that the 2011 settlement resolved the issues arising out of the alleged wrongful foreclosure in 2007, and that the Default Judgment was not void on its face because the "non-probate court" had jurisdiction over the issues raised in the Specific Performance Action.  They argued that the probate court had exclusive jurisdiction over the administration of the estate and that since the Specific Performance Action sought to enforce the settlement agreement in the Wrongful Foreclosure Action and had nothing to do with the administration of the estate, the probate court and the nonprobate court had

---

[3] By August 2019, the Investors had split into three groups.  Podlewski and the Reeds are represented by Schorr Law of Los Angeles.  Schorr Law also represents TLS and Newman.  The Levys continue to be represented by attorney Mahan, and Von Deutsche is self-represented.  Podlewski, the Reeds, TLS, and Newman have filed a respondents' brief on appeal; the Levys and Von Deutsche have not.  Martin, the entity that purchased the Property in 2016, has also filed a respondent's brief.

11

concurrent jurisdiction. They argued that the fact that Carol was sued both individually and as administrator did not invoke the probate court's exclusive jurisdiction and that the gravamen of the Specific Performance Action was unrelated to the administration of the estate. Alternatively, they argued that even if the probate court had exclusive jurisdiction, it would not render the default judgment void on its face since the nonprobate court still had jurisdiction over the subject matter and the parties. They observed that the Garrards had filed three "non-probate" lawsuits regarding the Property over several years. They asserted that the Garrards had waived their right to dispute jurisdiction by failing to appear and raise it in the Specific Performance Action and that the one form of action rule did not apply since the default judgment was not a money judgment.

Podlewski, the Reeds, Newman, and TLS also filed opposition to Plaintiffs' motion for a sua sponte ruling and entry of judgment based on the one form of action rule. They argued that the motion was actually a "Time-Barred Motion For Reconsideration," and that the Default Judgment did not violate the one form of action rule.

The court denied the second motion to vacate. It held that the "default judgment in M128920 was rendered by a court with jurisdiction. While the probate court has exclusive jurisdiction to probate and interpret a will, determine entitlement to distribution, and administer and distribute a decedent's estate, the lawsuit filed as Case M128920 regarding real property and the settlement of an earlier dispute was properly in a civil courtroom. (See *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1083 [(*Capra*)].)" The court also ordered that the matter remain set for a court trial on January 9, 2023.

Two weeks later, the court denied Plaintiffs' request for a sua sponte ruling and motion for entry of judgment based on the one action rule.

On December 2, 2022, the trial court issued a "notice of hearing" that advised the parties that it was reconsidering its ruling on the motion to vacate on its own motion and

12

gave them an opportunity to brief the following question: "whether the filing of the [second] Motion to Vacate Void Judgment pursuant to Code of Civil Procedure Section 473(d)" that was heard on November 4, 2022, "was an improper motion for reconsideration under Code of Civil Procedure Section 1008 and therefore no ruling on the motion should have been made." The court noted that Plaintiffs had "previously applied for an order to vacate that same judgment as void pursuant to" that same statute (Code Civ. Proc., § 473, subd. (d)) in November 2019 and that the order denying that motion was affirmed on appeal by this court in April 2022. The court thereafter denied the motion to vacate on the merits in a signed minute order filed on December 7, 2022, five days after issuing its notice of hearing.

Robert promptly filed a notice of appeal from the order denying the second motion to vacate on December 14, 2022 (Court of Appeal case No. H050729). The Garrards filed a separate notice of appeal from the same order on February 3, 2023 (Court of Appeal case No. H050802). On our own motion, this court ordered the two appeals considered together "for purposes of record preparation, briefing, oral argument, and disposition." Plaintiffs did not appeal the order denying their request for a sua sponte ruling and entry of judgment.

## II. DISCUSSION

### A. *Motions to Vacate Under Code of Civil Procedure Section 473, Subdivision (d)*

As before, Plaintiffs brought their second motion to vacate pursuant to Code of Civil Procedure section 473, subdivision (d), which provides that a trial court "may, on motion of either party after notice to the other party, set aside any void judgment or order." While the trial court has discretion to grant or deny a request to set aside a void order, it has no power under Code of Civil Procedure section 473, subdivision (d) to set aside an order that is not void. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*).)

13

"In determining whether an order is void for purposes of [Code of Civil Procedure] section 473, subdivision (d), courts distinguish between orders that are void on the face of the record and orders that appear valid on the face of the record but are shown to be invalid through consideration of extrinsic evidence. 'This distinction may be important in a particular case because it impacts the procedural mechanism available to attack the judgment [], when the judgment [] may be attacked, and how the party challenging the judgment [] proves that the judgment [] is void.' " (*Pittman, supra,* 20 Cal.App.5th at pp. 1020-1021.)

There is no time limit in which to challenge an order under Code of Civil Procedure section 473, subdivision (d). (*Pittman*, *supra,* 20 Cal.App.5th at p. 1021.) However, that subdivision of the statute applies only to an order that is void on its face— that is, an order where "the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence. [Citations.] . . . If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order is not void on its face. Such an order must be challenged within the six-month time limit prescribed by [Code of Civil Procedure] section 473, subdivision (b), or by an independent action in equity." (*Ibid*.)

Where a defendant does not answer the complaint, the judgment roll consists of "the summons, with the affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment. . . ." (Code Civ. Proc. § 670, subd. (a); *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 960-961.)

## B. *Appealability and Standard of Review*

An order denying a statutory motion to vacate a default judgment pursuant to Code of Civil Procedure section 473 is immediately appealable as an order after final judgment. (See *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137.) An appellate

court " 'generally faces two separate determinations when considering an appeal based on [Code of Civil Procedure] section 473, subdivision (d): whether the order or judgment is void and, if so, whether the trial court properly exercised its discretion in setting it aside.' [Citation.] The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for abuse of discretion." (*Pittman*, *supra*, 20 Cal.App.5th at p. 1020.) Since the trial court found that the civil division had jurisdiction to issue the Default Judgment, it impliedly concluded that the Default Judgment was not void. Our standard of review is therefore de novo. (*Ibid.*)

### C. *The Default Judgment Was Not Void for Lack of Jurisdiction*

Plaintiffs contend, as their "chief issue on appeal," that the Default Judgment is void and must be set aside "because the court, sitting as an ordinary civil court, did not and could not exercise in rem jurisdiction over the Estate of Richardson, and had no power to bind the administrator, qua administrator, nor to modify the terms of an approved creditor's claim for administrative expenses, nor to alter payment terms of a debt allocated by the probate court." They contend that the Investors had a "duty to FIRST petition the probate court" for any issue relating to a pending probate. In addressing this question, we examine the nature of jurisdiction in general and the jurisdiction of the probate court.

"The term 'jurisdiction' has different meanings, depending on the context in which it is used." (*Capra, supra,* 58 Cal.App.5th at p. 1082.) "In its truest sense, jurisdiction refers to a court's authority to try the case before it. This is a court's jurisdiction in a fundamental sense, the competency or inherent authority to hear a case and render a valid judgment. (*Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1344-1345 . . . [(*Harnedy*)].) 'Fundamental jurisdiction is, at its core, authority over both the subject matter and the parties.' (*People v. Chavez* (2018) 4 Cal.5th 771, 780 . . . .) Any

15

ruling issued by a court that lacks fundamental jurisdiction is void. (*Ibid.*) Fundamental jurisdiction is statewide and not specific to any one county." (*Capra*, at p. 1082.)

"Another layer of jurisdiction exists. For jurisdictional purposes, civil actions and proceedings are classified as ' "in personam," ' ' "in rem," ' or ' "quasi in rem," ' depending on the nature of the judgment sought. [Citation.] An action that seeks to impose a personal liability or obligation on the defendant in the plaintiff's favor is an in personam action, and the court must have jurisdiction over the defendant." (*Capra*, *supra*, 58 Cal.App.5th at p. 1082.) "If the court's jurisdiction is based on its authority over property within its territory, the action is ' "in rem," ' or ' "quasi in rem." ' In rem jurisdiction is traditionally based on the location of the property that is the subject of dispute within the territorial limits of the state. [Citation.] . . . An in rem action or proceeding seeks to affect the interests of all persons in a particular property or thing. [Citation.] A quasi in rem action is brought against someone personally, but the real objective is to deal with particular property. [Citation.] [¶] . . . Probate proceedings are proceedings in rem. A superior court has jurisdiction to determine the interests of all parties connected with the property of a decedent based on the property's location within the state." (*Id.* at pp. 1082-1083; *Estate of Kampen* (2011) 201 Cal.App.4th 971, 1003 (*Kampen*), citing *Estate of Radovich* (1957) 48 Cal.2d 116, 121 [the "jurisdiction of the probate court is in rem and the res is the decedent's estate"].)

California does not have separate "probate courts." Instead, probate jurisdiction is vested in the superior court. (Cal. Const., art. VI, § 10; Prob. Code, § 7050[4]; *In re Michael R*. (2006) 137 Cal.App.4th 126, 131, fn. 1.) Many superior courts have separate "probate departments" or divisions. The "probate department," however, is simply the superior court "sitting in probate." (Cal. Law Revision Com. com. 53A West's Ann. Prob. Code (2018 ed.) foll. § 7050, p. 13 ["Where appropriate, the reference to the

---

[4] Undesignated statutory references are to the Probate Code.

16

superior court in [§ 7050] means the department or judge of the court that deals with probate matters"]; *In re Michael R.*, *supra*, at p. 131, fn. 1 [" 'probate court' is but a convenient way of expressing the concept of a superior court sitting in exercise of its probate jurisdiction. This is but a colloquial expression"]; *Capra*, *supra*, 58 Cal.App.5th at p. 1083.)[5] On our own motion, we shall judicially notice the fact that the Monterey County Superior Court has a separate probate "division." (Evid. Code, §§ 459, subd. (a); 452, subd. (h).)

Superior court probate jurisdiction is subject to statutory jurisdictional fact and notice prerequisites, which must be satisfied for the court sitting in probate to validly exercise jurisdiction over a decedent's estate. (§§ 8005, subd. (b)(1), 8006; *Estate of Stevenson* (2006) 141 Cal.App.4th 1074, 1087 ["Notice is the cornerstone of estate proceedings"].) There is no dispute here that the probate division of the Monterey County Superior Court had jurisdiction over Alice's estate. The question is whether the probate division had exclusive jurisdiction over the Investors' Loan and the proceedings in the Specific Performance Action such that the Default Judgment entered by a nonprobate, civil department in that action was void and was required to be set aside.

When supervising any proceedings governed by the Probate Code, the superior court sitting in probate is a court of "general jurisdiction." (§ 800.) This means that, for purposes of deciding matters affecting estate administration, probate "courts" have "the same power and authority . . . as otherwise provided by law for a superior court . . . including, but not limited to, the matters authorized by Section 128 of the Code of Civil Procedure," which grants courts power to operate, including the contempt power. (§ 800;

---

[5] As Plaintiffs observe, in 1994, the Probate Code was revised and "discarded the former concept of 'limited jurisdiction' under which the powers of a superior court 'sitting in probate' were deemed to extend only to those matters *expressly conferred by statute* and certain 'incidental powers' necessary to enable probate courts to carry out their express statutory authority." (Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2023) at ¶ 3:52.1, pp. 3-17 to 3-18 (Ross & Cohen).)

17

Code Civ. Proc., § 128; see also *Estate of Kraus* (2010) 184 Cal.App.4th 103, 111, 114 [collecting cases].)  As courts of general jurisdiction, "probate courts" can hear " 'causes of action, or matters that are normally raised in a civil action to the extent that the matters are related factually to the subject matter of' " the probate petition, including competing claims over title to and distribution of decedent's property.  (*Estate of Kraus*, at p. 111.)

The Probate Code preserves the "division of business among different departments [or divisions] of the superior court."  (Law Rev. Com. com. to 53AWest's Ann. Prob. Code (2018 ed.) foll. § 7050, p. 13.)  Thus, proceedings concerning the *administration of a decedent's estate* are within the exclusive jurisdiction of the superior court *probate* department.  (§ 7050.)  But this "division of business" does not limit a probate judge's powers to something less than those vested in superior court judges exercising "general jurisdiction."  (§§ 800, 7050; *Estate of Bowles* (2008) 169 Cal.App.4th 684, 695-696 ["The superior court is divided into departments, including the probate department, as a matter of convenience; but the subject matter jurisdiction of the superior court is vested as a whole"].)

The jurisdiction of the superior court sitting in probate is "exclusive" as to certain matters and "concurrent" with that of the superior court not sitting in probate as to other matters.  (*Estate of Bowles*, *supra*, 169 Cal.App.4th at p. 695.)  "[S]tate statutes declare that a superior court sitting in probate has 'exclusive jurisdiction' over certain types of actions."  (*Capra*, *supra*, 58 Cal.App.5th at p. 1083.)  For example, only the probate division of the superior court is empowered to act in a decedent's estate administration and to do such things as:  (1) probate a will and adjudicate will contests (§§ 8200-8272); (2) interpret a will, trust, deed, or other instrument subject to probate division jurisdiction (§§ 21210-21122); (3) appoint estate representatives or revoke a representative's letters (§§ 8400 et seq., 8500 et seq.); (4) determine entitlement to distribution (§§ 11700-11705); (5) administer and distribute the decedent's estate (§§ 9600 et seq.; 11600 et seq.).  (*Capra*, at p. 1083; see also *Cabral v. Soares* (2007) 157 Cal.App.4th 1234, 1239

[challenges to validity of will or to administration of decedent's estate must be brought in probate proceeding].)

"Use of the term 'exclusive jurisdiction' in these contexts is somewhat misleading. The term does not refer to jurisdiction in the 'fundamental,' 'in personam' or 'in rem' sense. Rather, it concerns assigning exclusive responsibility over certain actions to the department of the superior court assigned to hear probate matters as against other departments *in that same county superior court*, such as the departments that hear civil matters." (*Capra*, *supra*, 58 Cal.App.5th at p. 1083.) "[E]ven in a county having a formal probate department, a nonprobate department *does not* lack fundamental jurisdiction over a probate matter. Instead, and as [the Supreme Court] court held in *Dowdall v. Superior Court* (1920) 183 Cal. 348, 353, . . . , the probate department has 'primary' jurisdiction and a nonprobate department 'secondary' jurisdiction of probate-related proceedings." (*Harnedy*, *supra*, 110 Cal.App.4th at pp. 1344-1345; see also *In re Michael R.*, *supra*, 137 Cal.App.4th 126 [family court did not lack fundamental jurisdiction to act in probate matter involving a conservatorship].)

" '[J]urisdictional errors can be of two types. A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable.' [Citation.] When a court merely acts in excess of jurisdiction, the judgment is only *voidable*, meaning the error is generally not subject to collateral attack." (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1021-1022.)

A nonprobate division that determines a matter that is within the "exclusive jurisdiction" of the probate division acts only '*in excess* of its jurisdiction,' " but does *not* lack fundamental jurisdiction over the matter. (*In re Michael R.*, *supra*, 137 Cal.App.4th at p. 146, italics added; see also *Harnedy*, *supra*, 110 Cal.App.4th at pp. 1344-1345; *Capra*, *supra*, 58 Cal.App.5th at p. 1083.) An act in excess of jurisdiction is valid until

set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel or, as in this case, the passage of time. (*In re Michael R.*, at p. 146.) Thus, even if the nonprobate court in the Specific Performance Action had determined a matter that was within the exclusive jurisdiction of the probate division—which as explained *ante*, we conclude it did not—it would have acted in excess of its jurisdiction but would not have lacked fundamental jurisdiction. Thus, at most the Default Judgment would have been voidable, not void for lack of jurisdiction and therefore not subject to being set aside under Code of Civil Procedure section 473, subdivision (d), which applies to void judgments.

However, we also determine that the nonprobate court in the Specific Performance Action did not act in excess of its jurisdiction. Once probate jurisdiction attaches over a decedent's estate, the court sitting in probate may determine *all* claims in, to, for and against and affecting the estate, even if those claims would be beyond the probate department's jurisdiction if asserted independently. As courts of "general jurisdiction," probate courts may exercise "supplemental" general jurisdiction over related claims whether or not expressly authorized by the Probate Code. (*Estate of Baglione* (1966) 65 Cal.2d 192, 196-197 [probate court has "the power to determine the whole controversy"]; *Estate of Kraus*, *supra*, 184 Cal.App.4th at p. 114; *Estate of Bowles*, *supra*, 169 Cal.App.4th at pp. 695-696.)

But despite its broad powers to determine related claims, the court sitting in probate—on its own motion or that of an interested party—may also order that an action or proceeding not specifically provided for in the Probate Code be determined in a separate civil action by a nonprobate division of the court. (§ 801.) To that end, "[u]pon the payment of the appropriate filing fees, the court may order transfer of the severed action or proceeding to the separate civil action." (§ 801.) In matters subject to the probate division's supplemental jurisdiction, the probate division's jurisdiction is *concurrent* with that of the superior court sitting in nonprobate, civil actions. (*Estate of*

*Bowles*, *supra*, 169 Cal.App.4th at pp. 695-696 [probate court had exclusive jurisdiction over internal affairs of trust and concurrent jurisdiction over claims against third parties who benefitted from trustee's breach of trust].)

As noted, there is no dispute that the superior court sitting in probate had exclusive jurisdiction over the administration of Alice's estate—including authorizing Carol to enter into the Investors' Loan—and the distribution of the estate's assets. The order for final distribution was entered on December 15, 2006. That order was appealable. (§ 1303, subd. (g) [an order directing distribution of property is appealable]; Code Civ. Proc., § 904.1, subd. (a)(10) [an appeal may be taken from an order made appealable by the Probate Code].) Since the record does not show whether that order was served by a party or the clerk, it was appealable no later than 180 days after it was entered, which was June 13, 2007. (Cal. Rules of Court, rule 8.104(a)(1) [time for appeal]; *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1456 [180-day period applied where record did not show whether appealable order was served by a party or clerk].) And since no one appealed the probate division's order for final distribution, it became final on June 13, 2007.

The probate division's order for final distribution provided that "Title to [the Property] shall be held by Carol . . . as her sole and separate property. She shall assume the property subject to all encumbrances associated with it as of the date of this Order," and that the Siblings' Note was to be secured by a *second* deed of trust against the Property. The encumbrances associated with the Property on December 15, 2006, (the date of the order for final distribution) included the Investors' Loan and the Siblings' Note, which was dated the same day as the order for final distribution. There has been no further activity in the Probate Action since December 2006.

In January 2007, the estate's counsel recorded the probate court's order for final distribution of Alice's estate which had transferred the Property to Carol. Carol added Kenneth to the title in June 2007, and the grant deed that she recorded at that time

21

acknowledged that the Property was "her sole and separate property" before she added Kenneth to the title.

Plaintiffs contend that the Investors should have filed the Specific Performance Action in the probate division of the superior court because it had exclusive jurisdiction over matters relating to the Property. They argue further that because the Investors filed the Specific Performance Action as a general civil action, not subject to the court's jurisdiction sitting in probate, the superior court was without jurisdiction to enter the Default Judgment. Plaintiffs argue that because the probate division had exercised exclusive in rem jurisdiction over the Property, other superior court judges lacked subject matter jurisdiction over the Property.

The Investors filed the Specific Performance Action in August 2014, more than seven and a half years after the Property, as well as liability for the Investors' Loan, was distributed to Carol and more than seven years after the order for final distribution became final. The Garrards had filed the Wrongful Foreclosure Action as a general civil action against the Investors and others and did not seek to invoke the jurisdiction of the probate division. The Garrards subsequently settled the Wrongful Foreclosure Action with the Investors and the settlement included modifications to the terms of the Investors' Loan. The Investors filed the Specific Performance Action to enforce the settlement agreement in the Wrongful Foreclosure Action. The Specific Performance Action had nothing to do with the administration of Alice's estate or the order for final distribution and therefore was not subject to the exclusive jurisdiction of the probate division. Moreover, by the time the Wrongful Foreclosure and Specific Performance Actions were filed, in 2008 and 2014 respectively, the Property had been distributed to Carol, was no longer part of the estate, and Carol had assumed responsibility for the Investor's Loan as part of the distribution. We therefore reject Plaintiffs' contention that the probate division had exclusive jurisdiction over the Property when the Specific Performance Action was filed.

22

Plaintiffs contend that because Carol was never discharged from her role as administrator of the estate, the Probate Action remains open, and the Specific Performance Action should have therefore been heard by the probate division. Plaintiffs' focus on the absence of a discharge order is misplaced. We look instead to the probate division's order for final distribution. That order expressly stated that "the administration of the estate is brought to a close . . . ." Moreover, "[w]hen an order for final distribution becomes final, it is conclusive as to the rights of all interested persons. (. . . § 11705, subd. (b)[])" and "the probate court loses jurisdiction over the estate's property except as necessary to carry out that order, and any other orders are null and void." (*Kampen*, *supra*, 201 Cal.App.4th at p. 1003.) Thus, in June 2007, when the order for final distribution became final, the probate division lost jurisdiction over the Property because the order transferring it to Carol as her sole and separate property was final and conclusive. (*Ibid.*) Since the probate division no longer had jurisdiction over the Property in June 2007, Plaintiffs' assertion that it had exclusive jurisdiction over the issues presented in the Specific Performance Action filed in 2014 is without merit.

Upon complying with the probate division's order for final distribution and filing the required receipts, Carol was entitled to a full discharge with respect to the property included in the order. (§§ 11753, subd. (a), 12250, subd. (a).) The record in the Probate Action reveals that Carol obtained and filed the receipts from Alice's granddaughters, who were the only heirs other than Carol to receive a distribution from the estate, other than the Siblings' Note, but that Carol never requested a discharge order. The order for final distribution disposed of the only remaining estate assets (the Property and the proceeds of the Investors' Loan) as the only other assets (Alice's furniture) had already been distributed to the heirs.

The probate court's order of final discharge releases the personal representative or administrator from all liability incurred after the date of discharge. (§§ 12250, subd. (a), 11753, subd. (a).) Even if Carol's failure to obtain an order discharging her from her role

23

as administrator means that the estate is still open, as Plaintiffs contend, any disputes over the Investors' Loan would be subject to the probate division's supplemental jurisdiction, not its exclusive jurisdiction. The probate division's jurisdiction was therefore concurrent with that of the civil division of the court and the Default Judgment, issued by the civil division, was not void for lack of jurisdiction.

*Capra*, which the trial court relied on, is instructive. *Capra* involved a contest among the heirs of Frank Capra (initially his three children, Frank Jr., Lucille, and Thomas, and later their children) for rights to a cabin located in Mono County and a permit issued by the U.S. Forest Service that authorized the use of federal land for the cabin. (*Capra*, *supra*, 58 Cal.App.5th at p. 1077.) After Frank Capra died in 1991, a probate proceeding was filed in Riverside County Superior Court. When the heirs attempted to transfer the use permit to themselves, the Forest Service would not allow them to include all three children's names on the permit, so they agreed that Thomas would be the representative on the permit. (*Id.* at p. 1078.) In 1993, the Riverside County Superior Court sitting in probate settled Capra's estate and ordered final distribution, with the residue of the estate, including the cabin and the permit, transferred to a family trust. (*Id.* at p. 1078.) Between 1993 and 2015, Capra's heirs operated as if the cabin belonged to the entire family. (*Id.* at pp. 1078-1079.) In September 2015, Thomas declared that he owned the cabin and the permit exclusively and denied the other family members access to the cabin. (*Id.* at pp. 1079-1080.) After Thomas threatened to sell the cabin and the permit, the other heirs sued him, and at Thomas's insistence, the case was transferred to Mono County. (*Id.* at p. 1080.) The trial court in Mono County sustained Thomas's demurrer to the second amended complaint without prejudice on jurisdictional grounds, reasoning that the probate court in Riverside County had exclusive jurisdiction to try the matter since Capra's estate "was probated in that court and the probate court had ordered the cabin and the permit to be transferred to the trust." (*Ibid.*) The court entered a judgment of dismissal and the plaintiffs appealed. (*Ibid.*)

24

The appellate court in *Capra* concluded that the Mono County Superior Court had jurisdiction to try the matter and that it "erred by dismissing the action based on the exclusive jurisdiction assigned to superior courts sitting in probate." (*Capra*, *supra*, 58 Cal.App.5th at p. 1083.) The court observed that there was no dispute that the Mono County court had fundamental jurisdiction to try the claims in the second amended complaint, which included declaratory relief, conversion, breach of fiduciary duty, constructive trust, trespass, theft by false pretense, and various forms of fraud. (*Id.* at pp. 1083-1084.) After addressing the probate courts' jurisdiction over trust-related matters, which is not applicable here, the court stated, "More significantly, this action does not arise from the probate of Frank Sr.'s estate. It does not concern the settlement of the estate, a testamentary trust, or the enforcement of the probate court's orders. It concerns what the parties did with the cabin and the permit *after* the estate had been settled and those assets had been transferred into an inter vivos trust that existed outside of probate. The administration of Frank Sr.'s estate has been closed since 1993, and the probate court did not assert any form of continuing jurisdiction or supervision over it. The probate court's in rem jurisdiction over a decedent's assets does not exist in the absence of a probate estate. [Citation.] Similarly, the probate court's continuing and exclusive jurisdiction 'presupposes an estate subject to administration.' [Citation.] There is no estate subject to administration here, and the cabin and permit are no longer property of the estate." (*Id.* at p. 1084.) The court held that the Riverside County court was not the proper court to try the matter merely because it probated and closed a related estate 27 years earlier and that the trial court erred in finding that the Riverside County court had exclusive jurisdiction over the matter. (*Ibid.*)[6]

<hr />

[6] Plaintiffs contend that we must view *Capra* with caution because it involved trust property and not a probate action. They are incorrect. The cabin and permit in *Capra* were subject to probate, and the probate court's order for final distribution directed that they be placed in a family trust when the estate was settled. (*Capra*, *supra*, 58 Cal.App.5th at p. 1078.)

25

Similarly here, the administration of Alice's estate was completed in 2006, and the probate court did not assert any form of continuing jurisdiction or supervision over it. The Specific Performance Action involved the settlement of the Wrongful Foreclosure Action, the terms of the settlement, and Carol's failure to perform under the settlement agreement, matters that occurred four-to-eight years *after* the estate was settled and the Property and liability for the Investor's Loan were transferred to Carol. After all the estate property was distributed in 2006, there was no estate subject to administration by the court sitting in probate and the Property was no longer estate property. (*Capra*, *supra*, 58 Cal.App.5th at p. 1084.) The probate division was not the proper court to try the Specific Performance Action merely because it probated and closed a related estate eight years earlier.

For the foregoing reasons, we conclude that the trial court did not err when it held that the probate division did not have exclusive jurisdiction over the Specific Performance Action and concluded the Default Judgment was not void for lack of jurisdiction.

### D. Probate Code Sections 9804-9806

Citing sections 9804, 9805, and 9806, Plaintiffs argue that once the probate division authorized Carol, as administrator, to encumber the Property with the Investors' Loan, all disputes arising under the deed of trust were required to be heard by the probate division.

Section 9804 provides that a probate court may authorize the administrator to borrow or encumber estate property if it would be to the advantage of the estate. Section 9805 sets forth requirements for the execution of a mortgage or deed of trust. Plaintiffs rely on subdivision (b) of section 9806, which provides: "Jurisdiction of the court to administer the estate of the decedent vests the court with jurisdiction to make the order for the note and for the security interest, lien, mortgage, or deed of trust. This jurisdiction

26

shall conclusively inure to the benefit of the owner of the security interest or lien, . . . , or the trustee and beneficiary named in the deed of trust, and their heirs and assigns."

Plaintiffs argue that the use of the word "conclusively" here means that "jurisdiction 'conclusively' remains in the probate court to decide all disputes arising. . . under a trust deed authorized by a probate court."  This contention confuses the term "conclusively" with the probate court's "exclusive" jurisdiction over estate administration.  Moreover, "conclusively" modifies the phrase "inure to the benefit of" and not the word "jurisdiction."  "Conclusively" means "definitively," "putting an end to debate or question especially by reason of irrefutability" and does not define the nature of the probate division's jurisdiction.  (See Merriam-Webster Dict. Online (2023) https://www.merriam-webster.com/dictionary/conclusively [as of Mar. 27, 2024], archived as <https://perma.cc/WD6H-U8QN>.)

Plaintiffs' reliance on sections 9804 to 9806 is misplaced and ignores the fact that liability for the Investors' Loan was transferred to Carol when the Property was distributed to her.  In addition, section 850 et seq. governs probate litigation over adverse claims to property.  Such claims need not be litigated in a probate proceeding, and the probate division's supplemental jurisdiction over such matters is concurrent with that of the superior court sitting in civil actions generally.  (Ross & Cohen, *supra*, at ¶¶ 3:60, 15.562.)  Moreover, it has been held that the beneficiary of a trust deed securing a promissory note, like the Investors, may not bring a section 850 action against the estate because the beneficiary's interest is simply too remote.  (*Estate of Sayles* (1982) 130 Cal.App.3d 275, 279 [cases decided under predecessor to section 850 have required a property interest "far more substantial than being the beneficiary of a trust deed securing a promissory note"].)  For these reasons we reject Plaintiffs' contentions based on sections 9804 through 9806.

27

### E. Extrinsic Fraud

Plaintiffs argue that even if the civil division of the trial court had jurisdiction in the Specific Performance Action, the Default Judgment "can be avoided based on extrinsic fraud and lack of notice to the heirs that appears from the 'judgment roll.' " They contend that the Default Judgment must be set aside because no heir other than Carol was served with the Specific Performance Action. They argue that willful suppression of facts and "[d]eliberate avoidance of giving notice to known heirs" are forms of extrinsic fraud that justify voiding and setting aside the default judgment.

These arguments fail for two reasons. First, Plaintiffs did not raise extrinsic fraud as a ground for setting aside the Default Judgment in their second motion to vacate. Since this point was not raised in the trial court, it has been forfeited on appeal. An "appellate court will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not raised below. [Citation.] The policy behind the rule is fairness. 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826.) Plaintiffs had ample opportunity to raise extrinsic fraud below, especially since this was the Garrards' second motion to vacate. Their failure to do so deprived Defendants of the chance to argue the issue and prevented the trial court from making any ruling on the point. Accordingly, we decline to consider it now.

Second, the probate court's order for final distribution awarded the Property to Carol as her sole and separate property subject to all encumbrances, including the Investor's Loan. Months later, after the order for final distribution was final and the time to appeal had run, Carol added Kenneth to the title. The Wrongful Foreclosure Action was filed by the Garrards as a civil action and no other heir joined in that action. The Garrards subsequently settled the Wrongful Foreclosure action with the Investors and none of the other heirs were parties to the settlement agreement. The Investors filed the

28

Specific Performance Action to enforce the settlement agreement in the Wrongful Foreclosure Action. Since Robert and the other heirs were not parties to the Wrongful Foreclosure Action or the settlement agreement, we perceive no error in failing to serve them in the Specific Performance Action.

### F. Collateral Estoppel

The last arguments in Plaintiffs' opening brief raise issues regarding the collateral estoppel, issue preclusion, or claim preclusion effect of the Default Judgment as to Robert and the estates of the other heirs that he represents. According to this section of the brief, which is bereft of any citation to the record, this issue was raised "multiple times" by Defendants. The brief suggests that this occurred in relation to the Investors' motion for judgment on the pleadings directed at Robert's FACI.

We decline to address these points for four reasons. First, as respondents point out, Plaintiffs did not raise these points in the second motion to vacate the Default Judgment, and as with the extrinsic fraud claim, have forfeited this claim on appeal. Second, Robert did not appeal the trial court's order on the motion for judgment on the pleadings. Third, Robert prevailed on the motion for judgment on the pleadings directed at his FACI, and the trial court found in his favor on the Investors' collateral estoppel argument. On appeal, appellants may not challenge trial court rulings that are favorable to them. (*Marich v. MGM/UA Telecommunications, Inc*. (2003) 113 Cal.App.4th 415, 431.) Finally, reviewing courts do not issue advisory opinions. (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179.)

### III. DISPOSITION

The December 7, 2022 order denying the second motion to vacate the Default Judgment is affirmed.

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.


_____
Lie, J.


H050729 Richardson v. Total Lender Solutions et al./H050802 Garrard et al. v. Total Lender Solutions, Inc. et al.